**UNITED STATES of America,**

v.

**Angelo PACCIONE, Anthony Vulpis, and John McDonald.**

**No. SSS 89 Cr. 446 (CBM).**

United States District Court, S.D. New York.

Oct. 12, 1990.

Amended Opinion re Sentencing of John McDonald Dec. 22, 1990.

Otto G. Obermaier, U.S. Atty. by Elliot Peters and Jeffrey Sklaroff, Asst. U.S. Attys., S.D.N.Y., New York City, for U.S.

Gustav Newman, Deborah Schwartz, Newman & Schwartz, New York City, for defendant Paccione.

Benjamin Brafman, P.C., New York City, for defendant Vulpis.

Robert Kasanaf, New York City, for defendant McDonald.

## AMENDED MEMORANDUM OPINION REGARDING SENTENCING

MOTLEY, District Judge.

## BACKGROUND

Defendant McDonald was convicted after trial by jury of one count of mail fraud. The maximum statutory penalty for mail fraud is five years in prison and a fine up to $250,000 and a special assessment of $50. Title 18 U.S.C. § 1341; Title 18 U.S.C. § 3013; Title 18 U.S.C. § 3571. See Appendix A.

Defendant Paccione was also convicted by the same jury of a substantive RICO charge and a charge of conspiracy to violate RICO. Title 18 U.S.C. § 1963(c) and (d). The maximum statutory penalty for each of these charges is twenty years in prison for a total of forty years, forfeiture of two times all gains from the racketeer-ing activity involved, or fines up to $250,000 for each count. Title 18 U.S.C. § 1963(a); Title 18 U.S.C. § 3571. All of the predicate acts which supported the two RICO counts were federal mail fraud offenses. In addition, Paccione was convicted of six related substantive Mail Fraud counts each of which carries the maximum penalty of five years for a total of thirty years and a fine of $250,000 as to each count for a total of $1,500,000. Title 18 U.S.C. § 1341. See Appendix A.

Defendant Vulpis was similarly convicted of a substantive RICO and a RICO conspiracy count with respect to which the maximum statutory penalties and forfeitures provisions are the same as for Paccione. Vulpis, in addition, was convicted of five related substantive Mail Fraud counts, each of which carries a maximum prison term of five years for a total of twenty-five years and a fine up to $250,000 for a total of $1,250,000. A special assessment of $50 is also required for each conviction for a total of $400 in the case of Paccione and a total of $350 in the case of Vulpis. See Appendix A.

Defendants are now before the court for sentence. Since the criminal activity here involved all took place after October 1, 1987, the statutory Sentencing Guidelines promulgated by the United States Sentencing Commission, and which became effective as a result of Congressional action on October 1, 1987, must be utilized in this case. Because this case involves both a mega-fraud and substantial environmental damage, application of the Guidelines has proved challenging, especially since case law guidance is still scarce.

Defendants Paccione and Vulpis, as noted, have been convicted of one of the largest and most serious frauds involving environmental crimes ever prosecuted in the United States. The amount of damage with respect to monetary loss resulting from the fraud is literally off the Sentencing Guidelines' charts and is in the tens of millions of dollars. The Guidelines contemplate fraud involving amounts up to $5,000,000. However, a conservative estimate of the fraud here is $35,000,000.

The convictions stem, in essence, from defendants' operation of an illegal landfill on Staten Island, a part of New York City, and the illegal disposal of thousands of tons of garbage and hazardous waste in violation of state and local law.

The evidence in this case disclosed that the private waste disposal industry is now highly regulated because of the critical need to protect the public health; as such permits and licenses must be obtained from various state and city agencies. These licenses and permits are issued based upon applications submitted by individuals and corporations and require information such as: the specific type of activity to be engaged in by the applicant, the location of the activity, and the identity of individuals.[1] Private waste carters must dispose of garbage at the City owned landfill at Fresh Kills and in order to do so they must pay a dumping fee.

Vulpis and Paccione used their permits and licenses as a cover to engage in the illegal collection, transportation and disposal of waste in violation of those licenses and permits and the laws applicable to them. In order to receive these licenses and permits, Vulpis and Paccione intentionally made false statements to City agencies claiming, among other things, that they intended to operate a clean fill grading operation on certain land in Staten Island. Instead of operating a clean fill grading operation, however, defendants dumped thousands of tons of garbage, some of which contained asbestos, on land in Staten Island near a residential area.

Vulpis' and Paccione's illegal scheme to dispose of waste developed when, in 1988, the City decided to raise its rates for the legal disposal of waste at the City owned landfill, at Fresh Kills on Staten Island, from $9 a ton to $18 a ton. Thus, by the scheme which Paccione and Vulpis perpetrated, they defrauded the City of New York of both licenses and dumping fees. Such dumping fees would have been derived from the lawful disposal of waste material at the City owned landfill.

Defendants were also found guilty of defrauding CSX of both land and money. This was accomplished by removing clean fill from land owned by CSX, without the authorization of CSX, and replacing it with waste materials. Defendants accomplished this by making false statements to CSX, including statements that only clean fill was being deposited on its property in Staten Island. Eventually CSX obtained a restraining order from a New York state court to prevent the continued dumping. Paccione and Vulpis, however, as the evidence disclosed, violated this order and continued dumping garbage on CSX land.

Paccione and codefendant McDonald[2] were convicted of mail fraud stemming from fraudulent statements given to the New York State Department of Environmental Conservation in order to obtain a permit to transport medical waste. These false statements included that McDonald was a 100% owner of defendant New York Environmental Contractors (NYEC) a New York Corporation and that a Pennsylvania incinerator had granted permission to deliver medical waste to its facility. Paccione and McDonald also defrauded doctors and hospitals by charging these waste generators the rates required for the lawful transfer, storage and disposal of waste which was higher than the rates actually incurred by the illegal disposal of such waste. By disposing of the medical waste illegally, defendants exposed the waste generators to both civil and criminal liability, although defendants had assured such generators that they were duly licensed.

## I. JOHN McDONALD

McDonald was convicted of one count of mail fraud with respect to his role in the operation of NYEC. The mail fraud stemmed from McDonald's having made false statements on a Department of Envi-

---

1. Corporations owned by defendants were also convicted of the same crimes.

2. McDonald was not found guilty of RICO or RICO conspiracy by the jury. However, the jury did find McDonald guilty of the fraudulent acts under the RICO count. Mr. McDonald was convicted of one count of mail fraud in regard to Dr. Vado.

ronmental Conservation permit application. The permit allowed NYEC to transport infectious medical waste. Specifically, the false statement involved McDonald statements that he was 100% owner of NYEC and that NYEC had obtained permission to dispose of the waste at a specific incinerator in Pennsylvania. Both of the above statements were false. In addition, McDonald defrauded numerous medical waste generators by charging them the rates required for the lawful disposal and transfer of such waste while disposing of such waste illegally and at far lower fees.

The fraud which McDonald perpetrated caused the loss of $20,000–$50,000. This figure is derived from the fees that the clients of New York Environmental Contractors paid. The receipts from such fees are between $20,000–$50,000. Under § 2F1.1 of the Federal Sentencing Guidelines, McDonald receives a base level of six for the fraud. An additional four levels must be added under § 2F1.1(b)(1)(E) because of the dollar amount of the loss ($20,000–$50,000) which was caused by the fraud. This brings McDonald's total level to ten.

■ Under § 2F1.1(b)(2), an additional two levels must be added if the offense involved more than minimal planning or a scheme to involve more than one victim. These two points are necessary to capture the seriousness of McDonald's conduct. The basic mail fraud offense does not factor into it either the number of victims of the fraud or the extent to which the fraud had previously been planned.

Defense argues that mail fraud, by its very nature, involves more than minimal planning and victimizes more than one person. But the commentary to § 2F1.1 provides that "more than minimal planning means more planning than is typical for commission of the offense in simple form." Section 2F1.1(b)(2) allows a judge to differentiate between mail fraud in its simple form and a complex mail fraud scheme. The court finds that McDonald did not engage in a simple mail fraud scheme but rather engaged in a complex scheme which involved forging a document to obtain a permit and sending out letters to solicit business to hundreds of waste generators. In addition, there was more than one victim of McDonald's fraud because NYEC had numerous clients. The jury found McDonald guilty of defrauding Long Island College Hospital, Brooklyn Kidney Center, Dr. Cyprys, Dr. Vinograd and Dr. Vado. These waste generators were defrauded into believing that their waste was being disposed of in accordance with applicable state and city laws.

■ This court has chosen to subtract two points under § 3E1.1(a) because McDonald has accepted responsibility for his acts. McDonald's acceptance of responsibility is demonstrated by his cooperation with the Federal Bureau of Investigation. Furthermore, McDonald's choice to stand trial was not a denial of his responsibility but rather a challenge to the applicability of the RICO and RICO Conspiracy charges of which he was acquitted.

■ Finally, this court will not depart downward because of McDonald's "special circumstances." A departure downward due to such circumstances as family ties and relationships is within the discretion of the sentencing court. *U.S. v. Sharpsteen,* 913 F.2d 59, 63–64 (2d Cir.1990); *See also U.S. v. Lara,* 905 F.2d 599 (2d Cir.1990); *United States v. Paulino,* 873 F.2d 23, 25 (2d Cir.1989). Although the court recognizes that it has the power to depart downward, the court finds that McDonald's circumstances do not warrant such a downward departure. The court has no doubt that McDonald is an excellent father and husband but McDonald also stands convicted of a serious offense.

■ McDonald has a total level of ten which corresponds to a sentence of six-twelve months. The court has chosen to sentence McDonald to twelve months because of the nature of the crime as described above, particularly the fact that a public agency was defrauded and the public's health was threatened. In addition, under § 5D3.2, this court will impose a period of two years supervised release. McDonald is to abide by the standard condi-

tions determined by the Sentencing Commission and shall not engage in the private waste carting business during that period of supervision. Finally this court is imposing a $250,000 fine on McDonald and a $50 assessment for his conviction for one count of mail fraud. 18 U.S.C. § 3571; 18 U.S.C. § 3013. The court finds and concludes that McDonald has not made full disclosure of his income and assets. He also has not made full disclosure of his liabilities. Particularly suspicious is an alleged repayment of a large loan to McDonald's father-in-law. However, based upon the income of McDonald and his wife from two businesses which they sold to defendant Paccione's wife in 1987 and other income received by them since 1988, amounting to over $1,000,000 and the future income from the sale of such businesses, the fine is not unreasonable.

## II. ANTHONY VULPIS AND ANGELO PACCIONE

### A. RICO and RICO Conspiracy

■ Defendants were convicted of RICO and RICO conspiracy and as such § 2E1.1 of the Federal Sentencing Guidelines applies. That section states that the base offense level for RICO is nineteen or the offense level applicable to the underlying racketeering activity. It instructs that the higher level is to be used. Application note 1 of § 2E1.1 directs that the adjustments in Chapter 3, Parts A, B, C and D (victim-related adjustments, adjustments for roles in the offense, obstruction of justice, and the multiple count rules) be applied for each underlying offense.

Under § 2E1.1 Paccione and Vulpis each receive a level of nineteen for the RICO offense. Four additional levels are then added under § 3B1.1(a) because defendants were both organizers and leaders "of a criminal activity that involved five or more participants or was otherwise extensive". *See infra* p. 375 (discussion of § 3B1.1). Thus defendants' total level under RICO is 23.

### B. Fraud

Fraud is the underlying RICO activity in which Paccione and Vulpis engaged. As previously stated fraud is governed by § 2F1.1 and provides for a base level of six. However, the amount of the fraud which Vulpis and Paccione perpetrated is tremendous. They defrauded the City by making false statements on applications which in turn deprived the City of millions of dollars in both licensing and dumping fees. Defendants also defrauded CSX by dumping waste containing asbestos upon its land and destroying any value that the land possessed. This damage also runs in the millions of dollars as will the cost of clean-up. According to the Guidelines the seriousness of a fraud offense is calculated by the loss that the victim suffers. Section 2F1.1 directs the reader to look at § 2B1.1 for a definition of loss. Section 2B1.1 states that:

> "loss" means the value of the property taken damaged or destroyed. Ordinarily when property is taken or destroyed the loss is the fair market value of the particular property in issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

In this case, defendants' fraudulent activity caused loss in the amount of approximately $34,250,000 ($9,000,000 loss to the city in dumping fees, $10,000,000 loss to CSX, and $15 million cost of clean-up).[3]

---

**3.** The Government's evidence showed the cost of cleanup to be between $15 and $30 million. The parties dispute the amount of loss resulting from the fraud. The Government contends that the loss is $34,250,000. Their breakdown is as follows: actual loss of fees for dumping to the City of New York = $9,250,000, destruction of the value of CSX's land = $10,000,000, cost of cleanup = $15,000,000. The Government calculated the lost fees to the City using the following formula: the City charge of $18.50 per cubic yard × 500,000 cubic yards of garbage that was illegally dumped.

The probation department found in the presentencing report that the defendants caused a loss of $19,250,000. This number was derived from the loss of fees to the City and the loss of value to CSX land. The probation department did not count the $15,000,000 cost of clean-up. Defendants argue that the Government's figure

Because the dollar amount of the loss was at least $5 million, § 2F1.1(b)(1)(L) requires this court to add an additional eleven levels to the basic fraud offense level of six. This brings each defendant's sentence level up to seventeen points.

### C. Nature of the Fraud

■ In addition, § 2F1.1(b)(2) requires that there be an increase of two levels if "the offense involved (A) more than minimal planning; (B) a scheme to defraud more than one victim; ... or (D) violation of any judicial or administrative order, injunction, decree or process."

In this case both Vulpis and Paccione were involved in a highly complex scheme that was well thought out and that required an inordinate amount of planning in fraudulently obtaining permits and directing an operation that resulted in the illegal dumping of thousands of tons of garbage. There were also numerous victims of defendants' fraud including: the Department of Transportation, the Department of Sanitation and CSX. In addition, Paccione was found to have defrauded the Department of Environmental Conservation, the Brooklyn Kidney Center, Dr. Cyprys, Dr. Vinograd, Long Island College Hospital, and Dr. Vado.

Moreover, Paccione and Vulpis continued to illegally dump waste on CSX land despite a restraining order prohibiting them from doing so. The court concludes that defendants' actions were in direct violation of an injunction. Under § 2F1.1(b)(2), the court must add two levels which brings Vulpis' and Paccione's level to nineteen.

### D. Role in the Offense

■ Part B of the Guidelines provides an adjustment to the offense level based upon the role the defendant played in committing the offense. Section 3B1.1 provides an increase of four levels if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The court finds that both Vulpis and Paccione led and organized the fraudulent schemes which were perpetrated and both men greatly profited from their extensive criminal activity. Paccione and Vulpis personally interacted with City agencies to fraudulently obtain the permits that granted them permission to conduct a clean fill grading operation. Instead, defendants used the landfill operation as the site for extensive illegal dumping. Paccione also assisted Vulpis in overseeing the operation of the dump and Paccione and his companies brought construction and demolition debris to the dump sometimes at the rate of eight trucks per hour. Vulpis directed truck drivers as to where to dump their loads. Because Vulpis and Paccione were leaders and organizers, the court is adding four additional levels. The present total for Vulpis and Paccione, under the fraud offense, is 23.

### E. Environmental Harm

■ Application note 15 to § 2F1.1 states, "[T]he mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state law arson where a fraudulent insurance claim was mailed might be prosecuted as mail fraud. In such cases the most analogous guideline (in the above case, § 2K1.4) is to be applied." Thus the Guidelines direct a sentencing court to look at an underlying substantive offense when the fraud statutes are used to provide jurisdiction.[4]

---

is distorted because the $15,000,000 is counted in determining the sentence level under the environmental offenses and thus to count it under the fraud offense as well is duplicative. A second objection involves the amount of cubic yards of garbage which was actually brought to the dump. Defendants claim that it was 139,000 cubic yards. Finally the defendants argue that the $10,000,000 loss to the land should not be counted because the land will be cleaned-up for $15,000,000 and as such there is no loss to the land. The defendants arrive at the figure of

$7,000,000 as representing the loss caused by the fraud.

Since the sentencing charts for fraud only go up to $5 million dollars, it is not necessary for this court to make a precise finding involving the exact amount of the loss which resulted from the fraud.

**4.** This court could have chosen not to look at the environmental offenses at all but rather to sentence the defendants pursuant only to the fraud offense. If that had been the case, this

Vulpis and Paccione through their illegal dumping of waste on Staten Island caused serious environmental harm. The land which CSX owned was devalued by at least ten million dollars. The cost of clean-up will be at least fifteen million dollars (and could go as high as $30 million) and the actual harm that was done to the environment by such wide-spread dumping of garbage, some of which contained asbestos, cannot be calculated. Thus in this case, the most analogous Guideline offense is § 2Q1.2. This section provides for offenses involving the mishandling of hazardous or toxic substances or pesticides and provides for a base level of eight.[5] Because Vulpis and Paccione engaged in the illegal dumping of substantial amounts of asbestos which is a hazardous, carcinogenic material the court finds that § 2Q1.2 is applicable. As such Paccione and Vulpis have a base level of eight for the environmental offenses.

Under § 2Q1.2(b)(1)(A) an additional six points must be added "[i]f the offense resulted in an ongoing, continuous or repetitive discharge, release or emission of a hazardous or toxic substance or pesticide into the environment." The court finds that Vulpis' and Paccione's continuous illegal use of the landfill to dispose of asbestos meets this requirement and the court is adding an additional six levels. Thus Vulpis' and Paccione's total level for the environmental offenses is presently fourteen.

Section 2Q1.2(b)(3) states that an additional four levels are to be added "if a cleanup required a substantial expenditure." In this case it will cost at least $15,000,000 to cleanup the land. Under any analysis, this is a substantial sum of money. Therefore four levels must be added to Vulpis' and Paccione's sentence. This brings the total to eighteen.

Section 2Q1.2(b)(4) requires that four levels be added "[i]f the offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit." Indeed, this is precisely what has happened in this case. Paccione and Vulpis did not have permits to conduct the type of waste disposal operation in which they engaged. The permits which they possessed allowed them only to conduct a clean fill grading operation. Their disposal of waste violated this permit. As such four levels must be added. This brings the total level to twenty-two.

■ Finally, as discussed above, Vulpis and Paccione played leadership roles in the dumping of illegal and toxic substances. Section 3B1.1 requires that four additional levels be added. This brings defendants' total level for the environmental offenses to twenty-six.[6]

### F. Acceptance of Responsibility

■ Section 3E1.1(a) of the Sentencing Guidelines provides for a two point reduction in the offense level if the defendant

---

court would have had to substantially depart upward to capture the harm which defendants caused to both the CSX land and the environment. In deciding how many levels to depart upward, this court would have looked to the environmental offense guidelines as a template. Thus the defendants would have had the same offense level whether this court uses application note 15 and looks at the environmental offenses or whether this court used its discretionary powers under § 5K2.0 or § 5K2.5. This court recognizes the recent warnings of the Second Circuit in *United States v. Barone*, 913 F.2d 46 (2d Cir.1990) and *U.S. v. McCall*, 915 F.2d 811 (2d Cir.1990) that a court cannot sentence a defendant for uncharged and unrelated conduct. However, in this case, there was a very strong nexus between the fraud and the environmental damage and such damage was found to exist by a preponderance of the evidence. In addition this court is using application note 15

and not departing upward in taking account of the environmental damage.

5. Application note 3 states that "this section applies to offenses involving pesticides or substances designated toxic or hazardous at the time of the offense by statute or regulation."

6. This court has the authority to add these four points under § 2E1.1 (governing RICO offenses). Application note 1 specifically allows adjustments for defendants' role in the offense. The RICO guideline is applicable because the environmental offense came under the rubric of the fraud offense which in turn came under the rubric of the RICO offense.

Alternatively, it could be argued that the environmental offense was itself part of the underlying RICO activity and therefore application note 1 is directly applicable.

clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct. Of course the Guidelines do not require that a defendant accept responsibility for other than those offenses to which he has pled guilty or of which he has been found guilty. *United States v. Santiago*, 906 F.2d 867 (2d Cir.1990); *United States v. Oliveras*, 905 F.2d 623 (2d Cir.1990). In this case, however, neither Vulpis nor Paccione have adequately shown that they have taken responsibility for their acts nor do they show any remorse or contrition. *United States v. Tillem*, 906 F.2d 814, 828 (2d Cir.1990) (defendant showed no contrition at sentencing following verdict); *United States v. Parker*, 903 F.2d 91, 106 (2d Cir.1990) ("[W]e see no violation of due process in the Guidelines' provision for lenience for a defendant who has taken the desired step toward rehabilitation, or in the denial of lenience for one who has not.").

■ This court is not punishing Vulpis ˋ and Paccione for going to trial. Rather the court is refusing to award defendants the reduction because the sole evidence that defendants submit to show acceptance of their responsibility are letters written after trial. In Paccione's letter he admits "his involvement in certain criminal activities." The document is written in the third person, referring to Paccione as "he". Moreover it is unsigned. The document also does not discuss or acknowledge the racketeering convictions. *See United States v. Ramirez*, 910 F.2d 1069 (2d Cir.1990) (reduction denied because defendant did not take responsibility for full scope of charged offense and took evasive actions). Similarly, Vulpis' statement comes from counsel and much of its wording is identical to that of Paccione's. Once again, Vulpis' statement is unsigned and does not fully admit his responsibility for the crimes of which he was convicted. *See U.S. v. Moskowitz*, 883 F.2d 1142, 1155 (2d Cir.), *aff'd, in part, vacated and remanded in part, United States v. Moskowitz*, 888 F.2d 223 (2d Cir. 1989) (defendant's affidavit accepting responsibility was narrowly tailored and judge found it insincere). In addition, defendants' failure to pay the Government, as agreed, $22 million prior to sentence, in lieu of all possible forfeiture and fines, further demonstrates to the court that defendants are not the least bit sincere or remorseful. If all "acceptance of responsibility" required is to have a defendant's attorney, after trial, submit a narrowly tailored statement saying that his client recognized some of the offenses that he committed, then every defendant would earn a two level reduction. This is not what the Sentencing Commission could have intended.

### G. Obstruction of Justice

■ § 3C1.1 of the Guidelines allows a sentencing judge to add two levels to a defendant's sentence if he has "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." Section 3C1.1 requires that the defendant consciously act with the purpose of obstructing justice and a finding of specific intent is necessary. *United States v. Thomas–Hamilton*, 907 F.2d 282, 285 (2d Cir.1990). In addition, application note 2 requires that suspect testimony be evaluated in a light most favorable to the defendant. There was some evidence that Vulpis attempted to bribe Lieutenant Dave Baker and Officer Milewski of the New York State Environmental Conservation Force. However, the court finds that Vulpis did not know that there was a federal investigation pending at the time of the alleged bribe or that the officers considered Vulpis' statements to be a bribe. In addition, the evidence presented at trial regarding the bribe was vigorously contested by the defendant. As such a two level increase is not warranted.

### H. Multiple Count Adjustment

■ According to the multiple count rules in § 3D1.2, the fraud offense and the environmental offense cannot be grouped together and as such the fraud offense and

the environmental offense are to be treated separately.[7] Under § 3D1.4 the court is directed to take the highest offense level as the base offense. In this case it is the environmental offense in which Paccione and Vulpis each have sentencing levels of twenty-six as compared to the fraud offense in which the sentencing level is twenty-three. Under § 3D1.4(a), the environmental offense is counted as one unit. An additional unit is added because the fraud offense which resulted in a total of twenty-three levels constitutes a group that is "from 1 to 4 levels less serious" than the environmental offense. Thus there are two units and two units warrant an increase of two levels which are to be added to the environmental offense under § 3D1.4. Paccione and Vulpis each have twenty-eight levels. Twenty-eight levels corresponds to a sentence of 78–97 months.[8]

Turning back to § 2E1.1 which governs RICO, the offense level of twenty-eight, derived from the fraud offense and the environmental offense, is higher than the offense level of twenty-three derived from the RICO offense. *See supra*, at 374. Therefore § 2E1.1(a)(2) directs that the higher offense level be employed to determine the sentence. Thus the offense level of twenty-eight will be used.

### I. Upward Departure

Vulpis and Paccione were provided with adequate notice of the fact that this court was contemplating an upward departure from the Guidelines. *See United States v. Jagmohan*, 909 F.2d 61 (2d Cir.1990) (discussing importance of giving adequate notice); *United States v. Kim*, 896 F.2d 678, 681 (2d Cir.1990) ("[A] sentencing judge contemplating an upward departure should inform the defendant of the factors that the judge is planning to rely upon and offer some brief explanation as to why these factors warrant a departure."); *United States v. Palta*, 880 F.2d 636, 640 (2d Cir. 1989) ("Adequate notice and the opportunity to contest an upward departure from the guidelines are indispensable to sentencing uniformity and fairness."). Defendants were aware that the court considered the amount of the fraud, the complexity of the fraud and the fact that defendants defaulted upon a $22 million court-approved settlement with the Government to be extremely serious.

Under the Guidelines, a sentencing judge is to impose a sentence within the applicable Guideline range "[u]nless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result

---

**7.** Application note 15 of § 2F1.1 (the fraud offense) allowed the court to look at the environmental offense. However, application note 15 does not state whether the offense levels from the fraud offense and the environmental offense should be added together using a multiple count adjustment or whether only the offense level from the underlying analogous guideline should be used, in this case the environmental offense. This court has chosen to add the two offense levels together using the multiple count adjustment. In this way, the sentence will reflect the fact that the defendants engaged in fraudulent activity which resulted in environmental harm. Alternatively, if this court were only able to look at the environmental offense, this court would have had to depart upward under § 5K2.0 to take into account the fact that the defendants had defrauded various agencies and individuals. Under these circumstances, this court would have departed at least two levels. Thus the resulting level would have been the same even if the court did not use the multiple count adjustment.

**8.** Even if the court had not independently added the four levels for role in the offense to both the fraud offense and the environmental offense, the result would have been the same if the court added the four levels at this point, after the multiple count adjustment had been considered. Without the four additional levels added to the environmental offense and fraud offense, the fraud level would have been nineteen and the environmental offense level would have been twenty-two. After the multiple count calculation was complete, the level would be twenty-four: one unit would be added for the highest offense of twenty-two and another unit added because the fraud offense was less than four levels lower than the environmental offense. Because there are two units, two levels would be added on to the twenty-two levels derived from the environmental offense. Thus the level would be twenty-four. With the additional four points for role in the offense added, the final level would have been twenty-eight.

in a sentence different from that described." 18 U.S.C. § 3553(b). Such an analysis requires that the judge examine what categories of circumstances the Commission adequately considered in formulating the Guidelines. *Kim*, 896 F.2d at 682. Consistent with this approach is the fact that a district judge "is granted wide discretion in determining what aggravating or mitigating circumstances to consider when deciding upon an upward departure from the guidelines." *Palta*, 880 F.2d at 639; *United States v. Correa–Vargas*, 860 F.2d 35, 37 (2d Cir.1988). *See also, United States v. Colon*, 905 F.2d 580, 584 (2d Cir.1990); *United States v. Sturgis*, 869 F.2d 54, 57 (2d Cir.1989) ("it is best to allow district judges 'sensible flexibility' in sentencing under the new act.").

■■■ The appropriate manner in which to depart upward is to examine the next higher category in sequence to determine if it adequately reflects the seriousness of the defendant's conduct. Doing so affords the judge the opportunity to compare the defendant's conduct with its aggravating circumstances, to the type of conduct for which the Commission had prescribed more severe punishment. *Kim*, 896 F.2d at 685; *U.S. v. Coe*, 891 F.2d 405, 413 (2d Cir.1989) (judge should examine next higher category in sequence to determine prior history category).

■■■ Although the facts of this case are unique, the Sentencing Guidelines explicitly give a judge the authority to depart upward. As previously discussed § 2F1.1(b)(2), which governs the fraud offense, provides for an enhancer, in part, when there was more than one victim of the fraud, the fraud involved more than minimal planning or the offense involved violation of a judicial decree. The court has the discretion under application note 1 to § 2F1.1 to depart upward from the Guidelines. The application note states, "the adjustments in § 2F1.1(b)(2) are alternative rather than cumulative. If in a particular case, however, several of the enumerated factors applied, upward departure might be warranted." In this case, defendants engaged in conduct which involved

all three of the above aggravating factors found in § 2F1.1(b)(2). Thus this court finds that Vulpis' and Paccione's level should be increased in order to adequately reflect the fact the more than one aggravating factor was involved. Since the Guidelines call for an enhancer of two for aggravating conduct which falls under just one of the subsections, this court concludes that it is reasonable and necessary to depart upwards from the Guidelines by an additional two levels. This brings the total levels for defendants to 30 and corresponds to a sentencing range of 97–121 months.

■■■ In addition, prior to the jury's verdict, defendants entered into a Settlement Agreement with the Government that provided that if defendants were found guilty, they would pay the Government $22 million in lieu of forfeiture and fines. *See* Appendix B. Under the terms of the agreement, defendants were jointly and severally liable. In exchange defendants received a complete resolution to any financial penalties rather than allowing the jury to determine any possible forfeiture and the court any possible fines. Under the agreement, the entire $22 million was due, in full, by September 8, 1990, after two prior installment payments. Sentencing was scheduled for September 12, 1990. The agreement contemplated that the money would be raised by the selling off of the numerous waste carting businesses which Paccione and Vulpis owned and which corporations were also defendants in this case. This court approved the agreement as requested by the parties.

As of this date, however, defendants have not paid one penny to the Government. Defendants claim that they were unable to make the required payments because of difficulty in selling their businesses. This court concludes that defendants had difficulty selling their business, but it is also the view of this court that defendants knew full well when they entered into the agreement that they would be unable to sell their businesses within the short amount of time for which the agreement provided without prior offers to buy from bona fide purchasers. The private

waste carting business is a closed market and potential buyers consist largely of friends and relatives of defendants. In fact, there was testimony that one attorney provided the legal work for the overwhelming majority of the transactions in the private waste carting industry. Tr. at 242, September 12, 1990. The court finds and concludes that friends and relatives cooperated with defendants in not purchasing the lucrative businesses owned by defendants and allowing defendants to remain in possession. Defendants had to have been aware of the fact that there would not be any buyers when they entered into the agreement. Defendants' actions caused the question of forfeiture to be taken away from the jury and has caused this court's hands to be tied with respect to the fines.

In addition, there was also testimony that, even if defendants had entered into a contract with a buyer, it could take as much as two years to obtain a license from New York City's Department of Consumer Affairs. Tr. at 237–238 (September 12, 1990). Paccione and Vulpis, who were both involved in the carting business for many years before their trial, were aware of the procedures involved in selling a business and had to know that a sale of a business in such a short time, even with a ready, able and willing, buyer, was close to impossible.

Defendants had more than ample warning that this court considered their failure to pay a grave issue. At the sentencing hearing, the court thoroughly warned defendants that their failure to pay the Government constituted a fraud on the Government and that due to such failure the court would consider an upward departure. Tr. at 125–126 (September 12, 1990).

This court finds that defendants' actions constitute a fraud upon both the Government and this court because the agreement caused the issue of forfeiture to be withdrawn from the jury and prevents the court from imposing fines. Under § 5K2.0, this court has discretion to depart upward if an aggravating circumstance exists that the Commission did not take into consideration. This court finds that the Sentencing Com-

mission did not consider the unusual circumstances that present themselves in this case. Here, defendants have perpetrated not only the fraud for which they were convicted but also an additional fraud on both the Government and this court. As such, an additional departure is warranted for both Paccione and Vulpis. An additional two levels shall be added to both of their levels. The court has chosen to add two levels because the conduct that defendants engaged in involving the forfeiture agreement is closely analogous to § 3C1.1 which provides that two levels shall be added if defendants willfully obstructed or impeded proceedings. Thus their total level is thirty-two which corresponds to a sentencing range of 121–151 months.

■ Alternatively, the court could have chosen to add the two points under § 3C1.1. Section 3C1.1 states: "If the defendant willfully impeded or obstructed or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase ... by 2 levels." The court's decision rests upon § 5K2.0 only because it is unclear whether § 3C1.1 applies to the circumstances of this case. It appears that § 3C1.1 applies to circumstances such as interfering with a witness, perjury or destroying evidence. See § 3C1.1, application note 1. It is, however, conceivable that § 3C1.1 would also apply in this case. As such, the court will discuss § 3C1.1 as an alternative to upward departure.

■ Commentary to § 3C1.1 states that such an enhancer may be applied to "a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense." "The word 'willfully' as used in section 3C1.1 requires that the defendant consciously act with the *purpose* of obstructing justice." *U.S. v. Thomas–Hamilton*, 907 F.2d 282, 285 (2d Cir.1990) (citing *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990)) (emphasis in original). Thus a finding of specific intent is necessary. *Id.* "Guidelines

§§ 2F1.1 and 3C1.1 are not mutually exclusive. The Guidelines specifically contemplate that both Chapter Two Guidelines relating to specific offense characteristics and § 3C1.1 are to be considered in reaching an appropriate sentence." *United States v. Irabor*, 894 F.2d 554, 556 (2d Cir.1990).

In addition, application note 2 provides that, "[i]n applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." "While this clearly does not require the sentencing judge to automatically accept the defendant's testimony as true, we believe that Note 2 'instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence has no firm conviction.'" *Thomas–Hamilton* 907 F.2d at 285 (citing *United States v. Franco–Torres*, 869 F.2d 797, 801 (5th Cir.1989)).

Thus as an alternative to an upward departure, the court finds that both defendants intentionally entered into the $22 million agreement without bona fide purchasers in sight knowing that the businesses could not be sold within the ninety day period because of procedural requirements. If points were added under § 3C1.1, those additional levels would have been added to both the fraud and the environmental offenses with the end result being a two level increase—the same result as adding two levels under § 5K2.0.

### III. ADDITIONAL POINTS

■ The Government has argued that the court should depart upward because § 2F1.1 does not fully account for the harmfulness and seriousness of Vulpis' and Paccione's crimes. In addition, they argue that the court should depart upward from § 2Q1.2 because that section does not contemplate the quantity of illegal dumping in which Paccione and Vulpis engaged. Although the crimes of Vulpis and Paccione are extremely serious, the court finds that the Sentencing Commission did contemplate offenses which would cause serious environmental and financial consequences. This is witnessed by the additional fourteen levels from the base environmental offense of eight which defendants were assessed due to the very serious and environmentally harmful nature of the offense under § 2Q1.2. In addition, whereas § 2F1.1 does not, standing alone, take into consideration the extent and harm of defendants' fraudulent activity, § 2F1.1 in combination with application note 15, which allowed the court to look at § 2Q1.2, does adequately provide for defendants' activity. Because of the Sentencing Commission's inclusion of application note 15, the court cannot depart upward because the Commission contemplated the possibility of such an unusual case.

■ This Court is sentencing defendants to 151 months. This point in the sentencing range was chosen because of the tremendous harm which defendants caused to both individuals, agencies and our environment. One hundred and fifty-one months adequately reflects the seriousness of defendants' behavior and takes into consideration the harm which their victims and our environment have suffered.

Finally § 5D3.1 requires a term of supervised release if the defendant is sentenced to a prison term of more than twelve months. Because defendants were convicted of class C and D felonies under § 5D3.2(b)(2), a term of 2–3 years supervised release must be imposed. The court imposes a term of three years supervised release. The terms of supervised release shall be the standard terms as laid out by the Sentencing Commission. In addition defendants shall be prohibited from participating, in any form, in the private waste carting industry during that period of supervision. As previously stated, Vulpis shall pay a special assessment of $350 and Paccione shall pay an assessment of $400.

The Federal Sentencing Guidelines were adopted to promote uniformity in sentencing. This case demonstrates how complex the Guidelines can be. It also demonstrates the number of variables which a case can present and the discretion that a sentencing judge still possesses. However, the Sentencing Guidelines succeed in at

least one respect. The Guidelines force a judge to meticulously analyze and explain in much greater detail than in past practice why ·a particular sentence was chosen.

So Ordered.

APPENDIX A

## SPECIAL VERDICT FORM

### COUNT ONE -- RICO SUBSTANTIVE

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| JOHN McDONALD | | ✓ |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | | ✓ |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

### RACKETEERING ACT ONE: MAIL FRAUD ON CITY GOVERNMENT AGENCIES

### RACKETEERING ACT #1(a)
(Mail Fraud on Department of Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |
| A & A LAND DEVELOPMENT | | ✓ |
| AUGUST RECYCLING, INC. | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |
| VULPIS BROTHERS, LTD. | | ✓ |

384

## RACKETEERING ACT #1(b)
(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |
| A & A LAND DEVELOPMENT | | ✓ |
| AUGUST RECYCLING, INC. | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |
| VULPIS BROTHERS, LTD. | | ✓ |

## RACKETEERING ACT #1(c)

(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## RACKETEERING ACT #1(d)
(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |

AUGUST RECYCLING, INC: ✓ _____

NATIONAL CARTING, INC. ✓ _____

STAGE CARTING, INC. ✓ _____

ROSEDALE CARTING, INC. ✓ _____

VULPIS BROTHERS, LTD. ✓ _____

### RACKETEERING ACT #1(e)
(Mail Fraud on Department of Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

### RACKETEERING ACT TWO: MAIL FRAUD ON STATE GOVERNMENT AGENCY

(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | _____ | ✓ |
| ANTHONY VULPIS | _____ | ✓ |
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

RACKETEERING ACT THREE: MAIL
AND WIRE FRAUD ON CSX

### RACKETEERING ACT #3(a)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |
| AUGUST RECYCLING, INC. | ____ | ✓ |
| NATIONAL CARTING, INC. | ____ | ✓ |
| STAGE CARTING, INC. | ____ | ✓ |
| ROSEDALE CARTING, INC. | ____ | ✓ |
| VULPIS BROTHERS, LTD. | ____ | ✓ |

### RACKETEERING ACT #3(b)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |
| AUGUST RECYCLING, INC. | ____ | ✓ |
| NATIONAL CARTING, INC. | ____ | ✓ |
| STAGE CARTING, INC. | ____ | ✓ |
| ROSEDALE CARTING, INC. | ____ | ✓ |
| VULPIS BROTHERS, LTD. | ____ | ✓ |

### RACKETEERING ACT #3(c)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |

| | FOUND | NOT FOUND |
|---|---|---|
| AUGUST RECYCLING, INC. | ——— | ✓ |
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | ——— | ✓ |

## RACKETEERING ACT 3#(d)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |
| A & A LAND DEVELOPMENT | ✓ | ——— |
| AUGUST RECYCLING, INC. | ✓ | ——— |
| NATIONAL CARTING, INC. | ✓ | ——— |
| STAGE CARTING, INC. | ✓ | ——— |
| ROSEDALE CARTING, INC. | ✓ | ——— |
| VULPIS BROTHERS, LTD. | ✓ | ——— |

## RACKETEERING ACT #3(e)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ——— | ✓ |
| ANTHONY VULPIS | ——— | ✓ |
| A & A LAND DEVELOPMENT | ——— | ✓ |
| AUGUST RECYCLING, INC. | ——— | ✓ |
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | ——— | ✓ |

388

## RACKETEERING ACT #3(f)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | _____ | ✓ |
| ANTHONY VULPIS | _____ | ✓ |
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

## RACKETEERING ACT FOUR:
## MAIL AND WIRE FRAUD ON CSX

## RACKETEERING ACT #4(a)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

## RACKETEERING ACT #4(b)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |

AUGUST RECYCLING, INC.

NATIONAL CARTING, INC.

STAGE CARTING, INC.

ROSEDALE CARTING, INC.

VULPIS BROTHERS, LTD.

## RACKETEERING ACT #4(c)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## RACKETEERING ACT #4(d)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

390

## RACKETEERING ACT #4(e)

| | FOUND | NOT FOUND |
|---------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

## RACKETEERING ACT #4(f)

| | FOUND | NOT FOUND |
|---------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

## RACKETEERING ACT #4(g)

| | FOUND | NOT FOUND |
|---------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |

- 8 -

STAGE CARTING, INC. ✓ ———

ROSEDALE CARTING, INC. ✓ ———

VULPIS BROTHERS, LTD. ✓ ———

### RACKETEERING ACT #4(h)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |
| A & A LAND DEVELOPMENT | ✓ | ——— |
| AUGUST RECYCLING, INC. | ✓ | ——— |
| NATIONAL CARTING, INC. | ✓ | ——— |
| STAGE CARTING, INC. | ✓ | ——— |
| ROSEDALE CARTING, INC. | ✓ | ——— |
| VULPIS BROTHERS, LTD. | ✓ | ——— |

### RACKETEERING ACT #4(i)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |
| A & A LAND DEVELOPMENT | ✓ | ——— |
| AUGUST RECYCLING, INC. | ✓ | ——— |
| NATIONAL CARTING, INC. | ✓ | ——— |
| STAGE CARTING, INC. | ✓ | ——— |
| ROSEDALE CARTING, INC. | ✓ | ——— |
| VULPIS BROTHERS, LTD. | ✓ | ——— |

### RACKETEERING ACT FIVE
#### (Mail Fraud on Clovelake Nursing Home)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ——— | ✓ |
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |

## RACKETEERING ACT SIX
### (Mail Fraud on Nephrology Foundation of Brooklyn)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARING, INC. | | ✓ |

## RACKETEERING ACT SEVEN
### (Mail Fraud on Coney Island Health Insurance Program)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARING, INC. | | ✓ |

## RACKETEERING ACT EIGHT
### (Mail Fraud on Coney Island Hospital)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |

## RACKETEERING ACT NINE
### (Mail Fraud on Downstate Medical Center)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

## RACKETEERING ACT TEN
### (Mail Fraud on Kings County Hospital)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

## RACKETEERING ACT ELEVEN
(Mail Fraud on Brooklyn Veteran's Administration)

| | FOUND | NOT FOUND |
|------------------------|-------|-----------|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

RACKETEERING ACT TWELVE:
MAIL FRAUD ON STATE GOVERNMENT
AGENCY

## RACKETEERING ACT #12(a)
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|------------------------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

## RACKETEERING ACT #12(b)
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|------------------------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

## RACKETEERING ACT #12(c)
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|------------------------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

- 11 -

### RACKETEERING ACT THIRTEEN
(Mail Fraud on Long Island College Hospital)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### RACKETEERING ACT FOURTEEN
(Mail Fraud on Brooklyn Kidney Center)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### RACKETEERING ACT FIFTEEN
(Mail Fraud on Dr. Cyprys)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### RACKETEERING ACT SIXTEEN
(Mail Fraud on Dr. Vinograd)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

- 12 -

### RACKETEERING ACT SEVENTEEN
#### (Mail Fraud on Dr. Vado)

| | FOUND | NOT FOUND |
|------------------------------------------|:-----:|:---------:|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### COUNT TWO -- RICO CONSPIRACY

| | GUILTY | NOT GUILTY |
|------------------------------------------|:------:|:----------:|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| JOHN McDONALD | | ✓ |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL RECYCLING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | | ✓ |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

### RACKETEERING ACT ONE: MAIL FRAUD ON CITY GOVERNMENT AGENCIES

### RACKETEERING ACT #1(a)
#### (Mail Fraud on Department of Sanitation)

| | FOUND | NOT FOUND |
|-------------------------|:-----:|:---------:|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |
| A & A LAND DEVELOPMENT | | ✓ |
| AUGUST RECYCLING, INC. | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |

- 13 -

| | FOUND | NOT FOUND |
|---|---|---|
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | | ✓ |

### RACKETEERING ACT #1(b)
(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ——— | ✓ |
| ANTHONY VULPIS | ——— | ✓ |
| A & A LAND DEVELOPMENT | ——— | ✓ |
| AUGUST RECYCLING, INC. | ——— | ✓ |
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | ——— | ✓ |

### RACKETEERING ACT #1(c)
(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |
| A & A LAND DEVELOPMENT | ✓ | ——— |
| AUGUST RECYCLING, INC. | ✓ | ——— |
| NATIONAL CARTING, INC. | ✓ | ——— |
| STAGE CARTING, INC. | ✓ | ——— |
| ROSEDALE CARTING, INC. | ✓ | ——— |
| VULPIS BROTHERS, LTD. | ✓ | ——— |

### RACKETEERING ACT #1(d)
(Mail Fraud on Departments of Transportation and Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |

A & A LAND DEVELOPMENT ✓ _____

AUGUST RECYCLING, INC. ✓ _____

NATIONAL CARTING, INC. ✓ _____

STAGE CARTING, INC. ✓ _____

ROSEDALE CARTING, INC. ✓ _____

VULPIS BROTHERS, LTD. ✓ _____

### RACKETEERING ACT #1(e)
(Mail Fraud on Department of Sanitation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

### RACKETEERING ACT TWO: MAIL FRAUD ON STATE GOVERNMENT AGENCY
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | _____ | ✓ |
| ANTHONY VULPIS | _____ | ✓ |
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

398

RACKETEERING ACT THREE: MAIL
AND WIRE FRAUD ON CSX

### RACKETEERING ACT #3(a)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |
| AUGUST RECYCLING, INC. | ____ | ✓ |
| NATIONAL CARTING, INC. | ____ | ✓ |
| STAGE CARTING, INC. | ____ | ✓ |
| ROSEDALE CARTING, INC. | ____ | ✓ |
| VULPIS BROTHERS, LTD. | ____ | ✓ |

### RACKETEERING ACT #3(b)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |
| AUGUST RECYCLING, INC. | ____ | ✓ |
| NATIONAL CARTING, INC. | ____ | ✓ |
| STAGE CARTING, INC. | ____ | ✓ |
| ROSEDALE CARTING, INC. | ____ | ✓ |
| VULPIS BROTHERS, LTD. | ____ | ✓ |

### RACKETEERING ACT #3(c)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ____ | ✓ |
| ANTHONY VULPIS | ____ | ✓ |
| A & A LAND DEVELOPMENT | ____ | ✓ |
| AUGUST RECYCLING, INC. | ____ | ✓ |

- 16 -

| | FOUND | NOT FOUND |
|---|---|---|
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | ——— | ✓ |

## RACKETEERING ACT 3#(d)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | ——— |
| ANTHONY VULPIS | ✓ | ——— |
| A & A LAND DEVELOPMENT | ✓ | ——— |
| AUGUST RECYCLING, INC. | ✓ | ——— |
| NATIONAL CARTING, INC. | ✓ | ——— |
| STAGE CARTING, INC. | ✓ | ——— |
| ROSEDALE CARTING, INC. | ✓ | ——— |
| VULPIS BROTHERS, LTD. | ✓ | ——— |

## RACKETEERING ACT #3(e)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ——— | ✓ |
| ANTHONY VULPIS | ——— | ✓ |
| A & A LAND DEVELOPMENT | ——— | ✓ |
| AUGUST RECYCLING, INC. | ——— | ✓ |
| NATIONAL CARTING, INC. | ——— | ✓ |
| STAGE CARTING, INC. | ——— | ✓ |
| ROSEDALE CARTING, INC. | ——— | ✓ |
| VULPIS BROTHERS, LTD. | ——— | ✓ |

## RACKETEERING ACT #3(f)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ——— | ✓ |
| ANTHONY VULPIS | ——— | ✓ |

400

| | FOUND | NOT FOUND |
|---|---|---|
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

### RACKETEERING ACT FOUR:
### MAIL AND WIRE FRAUD ON CSX

### RACKETEERING ACT #4(a)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

### RACKETEERING ACT #4(b)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

## RACKETEERING ACT #4(c)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## RACKETEERING ACT #4(d)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## RACKETEERING ACT #4(e)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |

402

VULPIS BROTHERS, LTD. _____/_____ _____

## RACKETEERING ACT #4(f)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | / | _____ |
| ANTHONY VULPIS | / | _____ |
| A & A LAND DEVELOPMENT | / | _____ |
| AUGUST RECYCLING, INC. | / | _____ |
| NATIONAL CARTING, INC. | / | _____ |
| STAGE CARTING, INC. | / | _____ |
| ROSEDALE CARTING, INC. | / | _____ |
| VULPIS BROTHERS, LTD. | / | _____ |

## RACKETEERING ACT #4(g)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | / | _____ |
| ANTHONY VULPIS | / | _____ |
| A & A LAND DEVELOPMENT | / | _____ |
| AUGUST RECYCLING, INC. | / | _____ |
| NATIONAL CARTING, INC. | / | _____ |
| STAGE CARTING, INC. | / | _____ |
| ROSEDALE CARTING, INC. | / | _____ |
| VULPIS BROTHERS, LTD. | / | _____ |

## RACKETEERING ACT #4(h)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | / | _____ |
| ANTHONY VULPIS | / | _____ |
| A & A LAND DEVELOPMENT | / | _____ |
| AUGUST RECYCLING, INC. | / | _____ |
| NATIONAL CARTING, INC. | / | _____ |

STAGE CARTING, INC. _____

ROSEDALE CARTING, INC. _____

VULPIS BROTHERS, LTD. _____

### RACKETEERING ACT #4(i)

| | FOUND | NOT FOUND |
|--------------------------|-------|-----------|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

### RACKETEERING ACT FIVE
### (Mail Fraud on Clovelake Nursing Home)

| | FOUND | NOT FOUND |
|--------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |

### RACKETEERING ACT SIX
### (Mail Fraud on Nephrology Foundation of Brooklyn)

| | FOUND | NOT FOUND |
|--------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARING, INC. | | ✓ |

### RACKETEERING ACT SEVEN
### (Mail Fraud on Coney Island Health Insurance Program)

| | FOUND | NOT FOUND |
|--------------------------|-------|-----------|
| ANGELO PACCIONE | | ✓ |

404

NATIONAL CARTING, INC. _____ _____ ✓

STAGE CARING, INC. _____ _____ ✓

## RACKETEERING ACT EIGHT
### (Mail Fraud on Coney Island Hospital)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |

## RACKETEERING ACT NINE
### (Mail Fraud on Downstate Medical Center)

| | FOUND | NOT FOUND |
|---|---|---|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

## RACKETEERING ACT TEN
### (Mail Fraud on Kings County Hospital)

| | FOUND | NOT FOUND |
|---|---|---|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

## RACKETEERING ACT ELEVEN
### (Mail Fraud on Brooklyn Veteran's Administration)

| | FOUND | NOT FOUND |
|---|---|---|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

## RACKETEERING ACT TWELVE:
## MAIL FRAUD ON STATE GOVERNMENT AGENCY

## RACKETEERING ACT #12(a)
### (Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |

JOHN McDONALD ____✓____ _____

NEW YORK ENVIRONMENTAL
 CONTRACTORS, INC. ____✓____ _____

## RACKETEERING ACT #12(b)
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| X JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

## RACKETEERING ACT #12(c)
(Mail Fraud on Department of Environmental Conservation)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| X JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

## RACKETEERING ACT THIRTEEN
(Mail Fraud on Long Island College Hospital)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| X JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

## RACKETEERING ACT FOURTEEN
(Mail Fraud on Brooklyn Kidney Center)

| | FOUND | NOT FOUND |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |

406

JOHN McDONALD _____/_____ _____

NEW YORK ENVIRONMENTAL
 CONTRACTORS, INC. _____/_____ _____

### RACKETEERING ACT FIFTEEN
(Mail Fraud on Dr. Cyprys)

| | FOUND | NOT FOUND |
|----------------------------------------------------|:-----:|:---------:|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| ✗ JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### RACKETEERING ACT SIXTEEN
(Mail Fraud on Dr. Vinograd)

| | FOUND | NOT FOUND |
|----------------------------------------------------|:-----:|:---------:|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| ✗ JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### RACKETEERING ACT SEVENTEEN
(Mail Fraud on Dr. Vado)

| | FOUND | NOT FOUND |
|----------------------------------------------------|:-----:|:---------:|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| ✗ JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

### COUNT THREE
(Mail Fraud -- Department of Sanitation)

| | GUILTY | NOT GUILTY |
|-----------------------|:------:|:----------:|
| ANGELO PACCIONE | | ✓ |
| ANTHONY VULPIS | | ✓ |

- 24 -

| | GUILTY | NOT GUILTY |
|---|---|---|
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

### COUNT FOUR
(Mail Fraud -- Departments of Transportation and Sanitation)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | _____ | ✓ |
| ANTHONY VULPIS | _____ | ✓ |
| A & A LAND DEVELOPMENT | _____ | ✓ |
| AUGUST RECYCLING, INC. | _____ | ✓ |
| NATIONAL CARTING, INC. | _____ | ✓ |
| STAGE CARTING, INC. | _____ | ✓ |
| ROSEDALE CARTING, INC. | _____ | ✓ |
| VULPIS BROTHERS, LTD. | _____ | ✓ |

### COUNT FIVE
(Mail Fraud -- Departments of Transportation and Sanitation)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | _____ |
| ANTHONY VULPIS | ✓ | _____ |
| A & A LAND DEVELOPMENT | ✓ | _____ |
| AUGUST RECYCLING, INC. | ✓ | _____ |
| NATIONAL CARTING, INC. | ✓ | _____ |
| STAGE CARTING, INC. | ✓ | _____ |
| ROSEDALE CARTING, INC. | ✓ | _____ |
| VULPIS BROTHERS, LTD. | ✓ | _____ |

408

## COUNT SIX
(Mail Fraud -- Departments of Transportation and Sanitation)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## COUNT SEVEN
(Mail Fraud -- Department of Sanitation)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## COUNT EIGHT
(Mail Fraud -- CSX Corp.)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |

| | GUILTY | NOT GUILTY |
|---|---|---|
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## COUNT NINE
### (Mail Fraud -- CSX Corp.)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | ✓ | |
| A & A LAND DEVELOPMENT | ✓ | |
| AUGUST RECYCLING, INC. | ✓ | |
| NATIONAL CARTING, INC. | ✓ | |
| STAGE CARTING, INC. | ✓ | |
| ROSEDALE CARTING, INC. | ✓ | |
| VULPIS BROTHERS, LTD. | ✓ | |

## COUNT TEN
### (Mail Fraud -- Coney Island Hospital)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | | ✓ |
| NATIONAL CARTING, INC. | | ✓ |
| STAGE CARTING, INC. | | ✓ |

## COUNT ELEVEN
### (Mail Fraud -- Kings County Hospital)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANTHONY VULPIS | | ✓ |
| ROSEDALE CARTING, INC. | | ✓ |

- 27 -

410

## COUNT TWELVE
### (Mail Fraud -- Dr. Vado)

| | GUILTY | NOT GUILTY |
|---|---|---|
| ANGELO PACCIONE | ✓ | |
| ANTHONY VULPIS | | ✓ |
| JOHN McDONALD | ✓ | |
| NEW YORK ENVIRONMENTAL CONTRACTORS, INC. | ✓ | |

APPENDIX B

*ited States Attorney*
*ithern District of New York*

One Saint Andrew's Plaza
New York, New York 10007

June 6, 1990

Honorable Constance Baker Motley
United States District Judge
Southern District of New York
United States Courthouse
Foley Square
New York, New York 10007

 Re: United States v. Angelo Paccione, et al,
 SSS 89 Cr. 446 (CBM)

Dear Judge Motley:

 This letter sets forth the agreement of the parties in the captioned case with respect to forfeitures, pursuant to Title 18, United States Code, Section 1963, and other financial penalties which the defendants face as a result of their convictions in this action. This agreement is subject to approval by the Court.

 Upon conviction under Title 18, United States Code, Section 1962, the defendants Angelo Paccione, National Carting, Inc., Stage Carting, Inc., August Recycling, Inc., Anthony Vulpis, Rosedale Carting, Inc., Vulpis Brothers, Ltd., ~~and~~ A & A Land Development, ~~and New York Environmental Contractors, Inc.~~ hereby forfeit to the Government the sum of $22 million in full satisfaction of the forfeiture penalties set forth in Title 18 United States Code, Section 1963, as contained in paragraphs 64 through 68 of Indictment SSS 89 Cr. 446 (CBM), as well as whatever fines and restitution might otherwise be imposed pursuant to Title 18, United States Code. The defendants named above hereby waive any defenses or challenges to the forfeiture provisions of the Indictment.

 The payment of the sum of $22 million shall be made by certified or bank check payable to the United States of America as follows: the sum of $4 million shall be paid on or before the thirtieth day from the date of the signing of this agreement; the sum of $8 million shall be paid on or before the sixtieth day from the date of the signing of this agreement; and the sum of $10 million shall be paid on or before the ninetieth day from the date of the signing of this agreement. The failure to make each

412

Honorable Constance Baker Motley

of these payments in full and on the dates required by this agreement shall constitute a default of the terms of this agreement. Upon payment, these funds shall be maintained by the Government pending the resolution of any appeals in the captioned case, or any retrials on remand and any appeals therefrom.

Each defendant named above shall be jointly and severally liable for the entire sum of $22 million. Each defendant shall execute and provide to the Government at the time this agreement is signed a confession of judgment in a form satisfactory to the Government in the amount of $22 million, copies of which are annexed hereto and made a part hereof. In the event of a default by the defendants named above in the payments required by this agreement, the Government shall have the right at its sole option and discretion to enter the confessions of judgment and the defendants named above waive notice with respect to such entry by the Government. The defendants named above also waive the right to interpose any pleadings, motions, objections or other response in connection with the entry by the Government of the confessions of judgment and, if any pleadings, motions, objections or other response is interposed, it is hereby withdrawn.

A Trustee or Trustees, appointed by the Court upon the Government's recommendation, shall oversee the operation of the respective companies under terms to be set forth by further Order of the Court until such time as the Government has received payment in full as provided for in this agreement. The Trustee's fees shall be paid by the defendants named above, who shall be jointly and severally liable for those fees.

John McDonald agrees to pay to the United States of America the sum of $100,000, to be paid by bank or cashier's check payable to the United States of America within one hundred twenty days of the signing of this agreement. This sum shall be paid in full satisfaction of the financial penalties set forth in Title 18, United States Code, Section 1963, as well as whatever fines and restitution might otherwise be imposed pursuant to Title 18, United States Code.

Angelo Paccione, Anthony Vulpis and John McDonald do hereby immediately forfeit their employment, titles, and positions with each of the defendant companies named above, and any successors in interest to these corporations. They shall no longer participate in any way in the affairs of the corporations, or in the private carting industry in any capacity. Their names shall be removed as officers of the corporations. They shall no longer have any authority to act as agents for those corporations except as specifically described below.

Angelo Paccione and Anthony Vulpis shall be permitted, however, to participate as agents for the defendant corporations

Honorable Constance Baker Motley

solely for the purpose of negotiating for the sale of their respective ownership interests in and the assets of these corporations, which sales are expressly contemplated by this agreement.

Any encumbrance or sale of any asset of the defendant corporations or any encumbrance or sale of the interests of Angelo Paccione or Anthony Vulpis in the defendant corporations or any sale or encumbrance of any of the defendant corporations themselves shall be subject to prior written approval of the Government. Without such prior written approval, no encumbrance or sale may take place.

The Restraining Order signed by this Court on September 21, 1989 shall remain in effect until such time as the Government has received payment in full as provided for in this agreement.

The parties agree jointly to recommend to the Court that sentencing shall occur ninety days from the date of the signing of this agreement, subject to the convenience of the Court.

The Government consents to release of the individual defendants on bail until the date of sentencing, or ninety days from the date of execution of this agreement, whichever comes first. The defendants' release on bail is subject to their full compliance with the terms and conditions of release imposed by the Court. The bail conditions of Angelo Paccione and Anthony Vulpis are hereby amended as follows. Each is released on a $2 million personal recognizance bond, co-signed by two financially responsible persons, such co-signatures to be provided within two weeks from the date of the signing of this agreement, and secured by the homes which have previously been posted as security to the Government. Further, both Angelo Paccione and Anthony Vulpis shall report daily to Pre-Trial Services by telephone, and once a week in person. The present bail conditions of John McDonald remain in effect.

This agreement shall constitute a complete resolution of any and all financial penalties, with the exception of the $50 mandatory special assessments, which the defendants face as a result of their convictions after trial in the captioned case.

414

Honorable Constance Baker Motley

 This agreement does not in any way preclude any civil or other actions that might be brought against any of the defendants arising out of the actions for which the defendants have been convicted in this case.

 Agreed and Consented to:

 OTTO G. OBERMAIER
 United States Attorney

By: _____
 ELLIOT R. PETERS
 JEFFREY B. SKLAROFF
 KEVIN J. FORD
 Assistant United States Attorneys

 _____
 ANGELO PACCIONE, individually and
 on behalf of
 NATIONAL CARTING, INC.,
 STAGE CARTING, INC.,
 AUGUST RECYCLING, INC.,
 A & A LAND DEVELOPMENT,
 ~~NEW YORK ENVIRONMENTAL CONTRACTORS, INC.~~

 _____
 GUSTAVE H. NEWMAN, ESQ.
 Attorney for ANGELO PACCIONE,
 NATIONAL CARTING, INC.,
 STAGE CARTING, INC.,
 AUGUST RECYCLING, INC.,
 A & A LAND DEVELOPMENT,
 ~~NEW YORK ENVIRONMENTAL CONTRACTORS, INC.~~

415

Honorable Constance Baker Motley

ANTHONY VULPIS, individually and
on behalf of
ROSEDALE CARTING. INC.,
VULPIS BROTHERS, LTD.,
A & A LAND DEVELOPMENT
~~NEW YORK ENVIRONMENTAL CONTRACTORS, INC.~~

BENJAMIN BRAFMAN, ESQ.
Attorney for ANTHONY VULPIS,
A & A LAND DEVELOPMENT,
~~NEW YORK ENVIRONMENTAL CONTRACTORS, INC.~~

DOMINICK VULPIS, on behalf of
ROSEDALE CARTING, INC.,
VULPIS BROTHERS, LTD.

*Michael Vulpis
on Be Half of Rosedale Co.*
MICHAEL VULPIS, on behalf of *as Trustee*
ROSEDALE CARTING, INC.,
VULPIS BROTHERS, LTD.

MICHAEL ROSS, ESQ., Attorney for
ROSEDALE CARTING, INC.,
VULPIS BROTHERS, LTD.

JOHN B. McDONALD, individually and
on behalf of NEW YORK ENVIRONMENTAL
CONTRACTORS, INC.

**416**

Honorable Constance Baker Motley

ROBERT KASANOF, ESQ. Attorney for
JOHN B. McDONALD

SO ORDERED:

CONSTANCE BAKER MOTLEY
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
June 8, 1990

---

AMENDED OPINION RE SENTENCING

United States of America

v.

John McDonald, Defendant.

Defendant McDonald shall have a fine of $79,500.00 imposed upon him. This fine is derived from § 5E4.2(c)(2)(C) of the Federal Sentencing Guidelines which authorizes a court to impose a fine of "three times the gross pecuniary gain to all participants in the offense." This court finds that there was a gross pecuniary gain of $26,500 derived from the fraud involving New York Environmental Contractors.