

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2002

# USA v. Chau

Precedential or Non-Precedential: Precedential

Docket No. 00-2720

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Chau" (2002). *2002 Decisions.* Paper 320.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/320

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed June 4, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2720

UNITED STATES OF AMERICA

v.

THOMAS CHAU
a/k/a TAM MINN CHAU
a/k/a TAM MIHN CHAU

Thomas Chau,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania.
(D.C. Crim. No. 99-cr-00704-1)
District Judge: Hon. Eduardo C. Robreno

No. 00-2721

UNITED STATES OF AMERICA

v.

THOMAS CHAU,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 00-cr-00130-1)
District Judge: Hon. Eduardo C. Robreno

Argued November 2, 2001

Before: SLOVITER, NYGAARD and CUDAHY,*
Circuit Judges

(Filed: June 4, 2002)

Hope C. Lefeber, Esq. (ARGUED)
1420 Walnut Street
Suite 1000
Philadelphia, PA 19102

 Attorney for Appellant

Michael L. Levy, Esq.
 United States Attorney
Robert A. Zauzmer, Esq.
 Assistant United States Attorney

Chief of Appeals
Linda Dale Hoffa, Esq. (ARGUED)
 Assistant United States Attorney
Alicia S. Resnicoff, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

 Attorneys for Appellee

_____

* Hon. Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation.

2

OPINION OF THE COURT

CUDAHY, Circuit Judge.

Thomas Chau ("Chau") appeals the sentence imposed by the district court, contending that there was error in the application of several enhancements. We vacate the sentence and remand for a new sentencing.

I.

This case arises out of an ultimately unlawful attempt to deal with a common problem facing many property owners --asbestos. In 1986, Chau purchased the former Drexel School (building) from the School District of Pennsylvania. Chau had no idea that the building contained asbestos. The building sat vacant for the next eleven or twelve years. During that time, Chau unsuccessfully attempted to sell the property. In the meantime, he apparently suffered financial and physical setbacks that led him to declare bankruptcy.

Things looked brighter when, in 1997, Chau received an offer for the building from a social service organization that wanted to renovate it into a nursing home for senior citizens. As part of the deal, Chau needed to get a zoning permit for the building to permit its use as a nursing home. In late July 1997, in preparation for the zoning inspection, Chau asked James Fantom, his handyman for fifteen years, to help him clean up the building. Fantom referred Chau to Vincent Turner, who agreed to help. Turner cleaned up the building by removing insulation that had fallen to the floor or was peeling off the walls, ceiling, and pipes throughout the building. Turner placed the refuse in unmarked trash bags. Chau would assist Turner in loading these trash bags into Chau's pick-up truck and then dumping these bags in a vacant lot in Philadelphia.

On or about July 23, 1997, a city inspector for Philadelphia's Air Management Services (AMS) went to the building to investigate a tip that Chau was illegally removing asbestos from the building and that asbestos-

filled trash bags were on the curb. The inspector found some opened trash bags in front of the building. He observed certain air cell pipes in the bags that he suspected might contain asbestos. The inspector collected samples of the insulation around the air cell pipes (the pipe wrap) for testing. Then, he covered the bags and marked them "danger." Later that day, the inspector met with Chau at a hearing before the Philadelphia Zoning Board and arranged for an inspection to be held on July 30, 1997. The inspector instructed Chau that the trash bags had to be removed from the streets because they might contain asbestos. Chau complied by placing the bags inside the building.

During the week of July 24 through July 27, 1997, Chau continued to ready the building for the zoning inspection by getting Turner to sweep and clean up the insulation. Because the cleanup was taking too long, Chau asked Fantom to help. Fantom agreed. During the evening, Chau, Turner, and Fantom would load trash bags filled with debris into Chau's truck and dump them along a roadside in Philadelphia.

On July 28, 1997, AMS received a tip that asbestos had been illegally removed from the building over the weekend and dumped somewhere in the city. A civil search warrant for the building was obtained and executed by the city inspector. During the search, asbestos contamination was detected near the pipe risers on the first, second and third floors. The inspector posted an asbestos warning on the front door and had the locks changed.

Subsequently, on July 30, 1997, the previously scheduled inspection took place. Additional asbestos was found in the basement area. Chau's wife was notified of the asbestos violations and she was informed that only a certified asbestos contractor could clean up and remove the asbestos. Mrs. Chau was instructed to let no one enter the building. The inspector also gave her the keys to the building before he left. On August 4, 1997, Chau was personally served with city notices of violations. He was instructed to keep the building sealed.

On September 18, 1997, the City of Philadelphia filed a civil complaint and a motion for preliminary injunction

against Chau seeking an immediate cleanup of any asbestos in the building. On November 19, 1997, the Environmental Protection Agency (EPA) executed a federal search warrant for the property and found that the building was contaminated with asbestos. In December 1997, the EPA assigned an on-scene coordinator to the building to begin an assessment of whether the property was eligible for Superfund relief. That same month Chau accepted a

proposal from Pepper Environmental Services (Pepper) to "stabilize" the building for $5,000. Pepper sealed the basement area to prevent further asbestos exposure to any persons inside or outside the building. Later, on January 12, 1998, Pepper offered to remove all of the asbestos in the basement for $58,000. Since he was bankrupt at the time, Chau did not accept Pepper's proposal.

Between January 13, 1998, and March 11, 1998, hearings were held on the City's civil complaint against Chau. After the hearings, the court ordered Chau to clean up the building. On March 6, 1998, the EPA issued an administrative compliance order outlining the steps that the EPA was ordering Chau to undertake in cleaning up the remaining asbestos.

After receiving these orders, Chau engaged in a desperate and illegal act. He covered his upper and lower body with black trash bags and tied some bags around his feet. Then, he put on rubber boots, and donned a clear garbage bag over his chest area, a paint respirator over his mouth and nose, aviator goggles and a bandana over his head. Thus equipped, he began stripping pipes and placing pipe wraps in trash bags when the on-scene EPA investigator arrived. Chau made some false statements to the investigator. He was then promptly stopped from cleaning up the building, and the property was locked up. Subsequently, the government declared the property a Superfund site and had it cleaned up for approximately $200,000. The City of Philadelphia cleaned up the dump sites for approximately $12,000.

In October 1999, Chau was indicted for violations of the Clean Air Act with two other related charges. The indictment charged him with polluting the air when he initially cleaned up the building, with Fantom's and

Turner's help, in 1997, and when he attempted to clean up the building by himself in 1998. Shortly before trial was to begin on March 13, 2000, Chau attempted to get Fantom to change his trial testimony. Chau was subsequently charged by information with obstruction of justice. He pleaded guilty to knowingly violating the Clean Air Act as well as to the obstruction of justice charge. He was sentenced to 51 months in jail, the lowest possible sentence after certain enhancements were applied. On appeal, Chau argues that the district court erred in applying those enhancements to his sentence.

II.

On review of a sentencing, the district court's findings of fact are accepted unless clearly erroneous, and the district court's application of the guidelines to the facts must be given due deference. 18 U.S.C. S 3742(e). In Koon v. United States, 518 U.S. 81, 98 (1996), the Court noted that the "deference that is due depends upon the nature of the

question presented."

A. Whether a six-level enhancement pursuant to U.S.S.G.
     S 2Q1.2(b)(1)(a) was warranted.

S 2Q1.2(b)(1) imposes a four-level enhancement for a single discharge of a hazardous substance and a six-level enhancement for a continuous or repetitive discharge of the substance. Chau argues that the district court erred in imposing this enhancement because the government failed to prove actual contamination or any substantial amount of discharge.

Application Note 5 for S 2Q1.2 states: "Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination." The circuits are split on the question whether the government must prove that the discharge caused actual environmental contamination. Compare United States v. Cunningham, 194 F.3d 1186, 1201-02 (11th Cir. 1999) (proof of actual contamination not required), United States v. Liebman, 40 F.3d 544, 550-51 (2d Cir. 1994) (same), and United States v. Goldfaden, 959 F.2d 1324, 1331 (5th Cir. 1992) (same) with United States v. Ferrin, 994 F.2d 658, 663 (9th Cir.

6

1993) (showing of actual contamination required). However, even under Ferrin, the record here supports a six-level enhancement. In Ferrin, the court held that"proof of environmental contamination does not necessarily require a full-blown scientific study." Ferrin, 994 F.2d at 664. The court continued: "We see no reason why in most cases reasonable inferences from available evidence would not suffice to support a conclusion that the illegal acts resulted in contamination." Here, there is substantial evidence that Chau disturbed the asbestos in the building. There is also evidence that some asbestos became exposed to the air. For example, the city inspector found that some opened garbage bags containing asbestos were left outside the building on the sidewalk. Further, the district court found that there had been a continuous discharge and this finding is entitled to deference. Thus, the district court correctly applied this enhancement to Chau's sentence.

B. Whether a four-level increase pursuant to U.S.S.G.
     S 2Q1.2(b)(3) was warranted.

S 2Q1.2(b)(3) provides that "[i]f the offense resulted in disruption of public utilities or evacuation of a community, or if cleanup required a substantial expenditure, increase by 4 levels." Chau argues that this enhancement should not apply to him because Superfund relief was initiated prior to any criminal charges being brought against him and, since the cleanup was paid out of Superfund monies, there was no substantial expenditure. Alternatively, he argues that the actual cost of the cleanup was $58,000 (the amount proposed by Pepper to remove the asbestos), which is not a substantial expenditure.

Here, Chau's actions resulted in a cleanup that required substantial expenditure. The fact that Superfund relief was authorized prior to the institution of criminal charges is irrelevant because it was Chau's criminal acts that led in part to the expenditure of Superfund monies. Chau's alternative argument is also unpersuasive. Although we believe that $58,000 is a substantial expenditure, the district court found that the cost of cleaning up Chau's contamination of the environment was $200,000. This is a finding of fact that is not clearly erroneous. And we hold that, for the purposes of S 2Q1.2(b)(3), $200,000 is a

substantial expenditure. Cf. United States v. Bogas, 920 F.2d 363 (6th Cir. 1990) (holding that $100,000 was a substantial expenditure). Thus, the district court did not err in applying the four-level enhancement.

C. Whether a four-level increase pursuant to U.S.S.G.
    S 2Q1.2(b)(4) was warranted.

S 2Q1.2(b)(4) states: "If the offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit, increase by 4 levels." Chau argues that this enhancement was improperly applied to his case because a permit violation was not part of the charges against him. Whether S 2Q1.2(b)(4) should apply to this case is an issue of law that is reviewed de novo.

The government charged Chau under 42 U.S.C. S 7413(c)(1), the substantive violation provision of the Clean Air Act, and not S 7431(c)(2), the recordkeeping violation provision of the Act. As a guide to applying the various sentencing enhancements, the background commentary to S 2Q1.2(b) states that "[t]he first four specific offense characteristics provide enhancements when the offense involves a substantive violation." Thus, S 2Q1.2(b)(4), one of the first four specific offense characteristics importing a four-level increase, applies to Chau because he was charged with a substantive violation. However, this enhancement applies only if the substantive violation involves a permit.

The government contends that there are two possible permits involved in this case. One is a federal"permit" under 42 U.S.C. S 7413(c)(2); the other is a permit required by the City of Philadelphia before asbestos can be removed. With respect to what the government argues is a federal "permit" under S 7413(c)(2), we hold that this is not a permit for the purposes of S 2Q1.2(b)(4). Section 7413(c)(2) does not impose a "permit" requirement prior to asbestos cleanup; it only requires notice of the cleanup to the government. While the government argues that the notice provision is effectively a permit, that is not the common understanding of the word "permit," which is"a written warrant or license granted by one having authority." Merriam Webster's Collegiate Dictionary 866 (10th Ed.

1997); see also Black's Law Dictionary 1140 (6th ed. 1990) ("A license or grant of authority to do something."). A requirement that someone provide written notice of an intention to perform an act is not the same as the EPA's granting of a license, or other permission, to the person to perform the act in question (even though the purpose of the two procedures may be similar). Thus, S 7413(c)(2) does not provide a basis for an enhancement under S 2Q1.2(b)(4). We note that the EPA could have charged Chau with violating the notification requirement of S 7413(c)(2), but declined to do so.

The other possible permit involved here is the permit required by the City of Philadelphia. The government argues that this permit is a sufficient basis for a district court to impose an enhancement under S 2Q1.2(b)(4). We have never addressed in a published opinion whether a city permit will satisfy the permit requirement of S 2Q1.2(b)(4) in a violation of the Clean Air Act. We have, however, dealt with this question before in two unpublished decisions that offered contradictory conclusions. See United States v. Banks, No. 96-1422 (3d Cir. January 7, 1997) (affirming enhancement) and United States v. Burrell, No. 96-1419 (3d Cir. October 23, 1996) (reversing enhancement). The conflicting determinations apparently reflected a difference in the facts and procedural posture of those cases.

The government argues that a city permit is a sufficient basis to impose a four-level enhancement under S 2Q1.2(b)(4) because that provision attaches consequences to what it calls a "permit" without designation of an issuing jurisdiction. The government also cites United States v. Paccione, 751 F. Supp. 368 (S.D.N.Y. 1990), in support of its view. However, Paccione is distinguishable. In that case, defendants Paccione and Vulpis were convicted of mail fraud, racketeering and racketeering conspiracy charges. Paccione, 751 F. Supp. at 371-72. The charges stemmed from the illegal operation of a landfill, and because the crimes resulted in substantial environmental damage, the district court looked to the environmental offenses guidelines to calculate the sentence. Since the city required a permit to operate a landfill that accepted asbestos, it was the lack of a proper permit that rendered the operation of

the landfill illegal. Because the defendants "did not have permits to conduct the types of waste disposal operation in which they engaged," the district court imposed the four-level enhancement pursuant to S 2Q1.2(b)(4). Paccione, 751 F. Supp. at 376. Thus, a permit was integral to the criminal charges in Paccione, but a permit is not integral to the charges against Chau because he was charged with violations of the Clean Air Act, with respect to which there was no permit requirement. See United States v. Weintraub,

96 F. Supp. 2d. 135, 137 (D. Conn. 2000) ("It is undisputed that there is no permit requirement of any sort for the disposal of asbestos under the Clean Air Act. . . . Furthermore, the Clean Air Act contains no delegation of permitting authority or any incorporation of state permitting requirements related to the handling of regulated asbestos materials.").

The absence of a permit requirement in the Clean Air Act also renders the government's plain language argument unpersuasive. In order to apply the enhancement, S 2Q1.2(b)(4) requires that the offense must "involve" a permit violation. "Involve" is defined variously as "to relate to closely: [to] connect" and "to have within or as part of itself: [to] include." Merriam Webster's Collegiate Dictionary 617 (10th Ed. 1997). While the city permit in this case can plausibly be described as being "connected" to the violations of the Clean Air Act, the city permit was in no sense integral to the violations. It is not the lack of the permit that imparts illegality under the Clean Air Act. The fact is that under the enforcement procedure of the Clean Air Act, there are no penalties for violating a permit. This enforcement procedure reflects the EPA's belief that "[t]he burden imposed by requiring permits for asbestos demolition and renovation is unnecessary because it would provide few additional environmental or enforcement benefits." 57 Fed. Reg. 32250, 32263 (1992). Because the Clean Air Act does not contemplate a permit violation as a basis of enforcement, the S 2Q1.2(b)(4) enhancement is not available. This reading of S 2Q1.2(b)(4) does not render it superfluous, because other environmental statutes impose a permit requirement where the enhancement would be quite appropriate. See Weintraub, 96 F. Supp. 2d at 138

10

(collecting environmental statutes that contain permit requirements or incorporate state permit requirements).

Our interpretation of S 2Q1.2(b)(4) is consistent with that of the only reported federal authority on the matter. In Weintraub, the defendant was convicted of conspiracy to violate the Clean Air Act as well as of substantive violations of the Act. 96 F. Supp. 2d at 136. The government argued that the defendant should receive an enhancement under S 2Q1.2(b)(4) "because the asbestos disposal was done without obtaining prior written authorization from the Connecticut Department of Environmental Protection as required under state regulation." Id. The district court held that, "absent any federal requirement of any permit related to asbestos handling under the Clean Air Act, expressly or by delegation to the state regulatory schemes, Weintraub's offense of conviction is unrelated to his noncompliance with the state prior authorization requirement and the Court concludes that Section 2Q1.2(b)(4) is therefore inapplicable to Weintraub's offense." Id. at 138.

The government attempts to distinguish Weintraub by arguing that, in the present case, the city permit was

incorporated into the Clean Air Act because the EPA delegated to the City of Philadelphia the authority to enforce the Clean Air Act. But the EPA's delegation of authority to enforce does not incorporate the City's permit requirement into the Clean Air Act. Rather, the EPA's delegation of authority provides that "[e]nforcement of the NSPS and NESHAP regulations [dealing with Clean Air Act work practice standards] are the primary responsibility of the [City of Philadelphia Health] Department .. . . U.S. E.P.A. retains authority to enforce any NSPS or NESHAP standard whenever such enforcement is deemed by the U.S. EPA to be necessary to carry out the purposes of the Clean Air Act." 50 Fed. Reg. 34140, at 39 (August 23, 1985). This delegation provides that the City may enforce the Clean Air Act as written. It does not contemplate that the City may create new requirements for compliance with the Clean Air Act.

Of course, this does not mean that the City cannot adopt mechanisms of its own--like a permit. Our system of environmental protection envisions concurrent enforcement

activities by federal, state, and local authorities. But the City's permit requirement is its own, and operates independently of, and outside the federal requirement. Such a City obligation is not incorporated into federal law. Cf. Weintraub, 96 F. Supp.2d at 138 (noting that"while Connecticut's prior written authorization requirement is not preempted by the Clean Air Act, it is also not incorporated into federal law"). Since Chau was charged with violating the federal requirements of the Clean Air Act, his apparent violation of a city permit, quite independent of the Clean Air Act, cannot be the basis for an enhancement of his sentence for violating that statute. Thus, the district court erred in applying the four-level enhancement.

D. Whether a two-level upward adjustment pursuant to
       U.S.S.G. S 3B1.1(c) was warranted.

S 3B1.1(c) provides a two-level enhancement for being an organizer, leader, manager, or supervisor of criminal activity involving two or more participants. Chau argues that this enhancement is improper because he merely directed his handyman, Fantom, to clean up the building with brooms, sledges and hefty trash bags. However, this is sufficient for a district court to impose this enhancement. S 3B1.1(c) requires only that the defendant be"an organizer, leader, manager, or supervisor in any criminal activity." As several courts have noted, a manager or supervisor is one who "exercise[s] some degree of control over others involved in the offense." United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990). Here, Chau ordered Turner to clean up the building. Later, he asked Fantom to help. Then, Chau worked with Fantom and Turner to dump the asbestos at various sites in the city. Chau's participation in the cleanup indicates that he was in a position to exercise supervisory control over both Fantom

and Turner. The district court found that Chau did exercise some degree of control over Fantom and Turner, and this finding is not clearly erroneous. Thus, the district court did not err in applying this enhancement.

III.

For the foregoing reasons, we VACATE the sentence of the district court and REMAND to the district court for re-sentencing.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit