**UNITED STATES of America,**
**Appellee,**

v.

**Frank RUSSO, Defendant–Appellant.**

**No. 07–5047–cr.**

United States Court of Appeals,
Second Circuit.

June 13, 2008.

Craig A. Benedict (Elizabeth S. Riker, on the brief), Assistant United States Attorney, for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, NY, for Appellee.

Max D. Stern (Alexandra H. Deal, on the brief), Stern, Shapiro, Weissberg & Garin, LLP, Boston, MA, for Appellant.

Present: Hon. RALPH K. WINTER, Hon. ROBERT D. SACK, and Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Defendant-appellant Frank Russo pleaded guilty to one count of conspiring to violate the Clean Air Act, 42 U.S.C. § 7401 *et seq.,* by conducting asbestos abatements without following applicable Environmental Protection Agency ("EPA") regulations. The district court (Hurd, J.) sentenced him principally to a term of eighteen months' imprisonment. Russo now appeals from the sentence. We assume familiarity with the facts and procedural history.

We review sentences for reasonableness, a district court's interpretation of the United States Sentencing Guidelines *de novo,* and findings of fact for clear error. *United States v. Mejia,* 461 F.3d 158, 162 (2d Cir.2006). Although the government contends that many of Russo's claims on appeal have not been preserved and therefore are subject to plain error review, *see United States v. Verkhoglyad,* 516 F.3d 122, 128 (2d Cir.2008), we decline to reach the issue of whether this standard is appropriate, as we conclude that the claims fail even under the less stringent standards urged by Russo.

■ Russo first challenges the application of a four-level sentencing enhancement under Guidelines Section 2Q1.2(b)(1)(B) for discharge of hazardous materials into the environment. Contrary to Russo's contention, the district court made adequate findings as to environmental discharge. The sentencing judge expressly stated in open court that "there was some discharge," and that although a

six-level enhancement under Section 2Q1.2(b)(1)(A) for continuous, ongoing, or repetitive discharge was not appropriate, a four-level enhancement under Section 2Q1.2(b)(1)(B) nevertheless was warranted because of the "relatively short duration of the offense and resulting discharge." The judge repeated this last statement in the written judgment.

Furthermore, these findings were not clearly erroneous. Three workers recruited to remove asbestos at the Broadalbin plant stated in affidavits that they were not "provided with any decontamination unit from which to remove asbestos from [their] bodies, tools used during the removal process, or bags of asbestos taken away from the project. As a result, friable asbestos was carried by [them] on [their] bodies, tools and bags outside the buildings, into the outdoor environment." Moreover, Special Agent Michael Dwyer of the EPA testified that a security officer at the Broadalbin facility told him shortly after the unlawful abatement there that "he saw white substances on the ground outside the building" and on the water of a creek that runs along the side of the building. Russo concedes that "a finding that the hazardous waste came into contact with land or water or was released into the air is the appropriate predicate for an enhancement under [Section 2Q1.2(b)(1)]". *United States v. Ferrin,* 994 F.2d 658, 664 (9th Cir.1993). Accordingly, we conclude that the district court adequately made findings, amply supported by the record, to support the four-level discharge enhancement.

■ Russo next challenges the district court's application of a four-level enhancement under Guidelines Section 2Q1.2(b)(3) for causing contamination that resulted in substantial cleanup expenditures. The district court found that "the cleanup caused by the offense required a substantial ex-

penditure. In fact, ... the total cleanup for the two plants was over 2.5 million dollars." Russo does not dispute that this amount was spent to clean the facilities, nor that $2.5 million is "substantial" for purposes of Section 2Q1.2(b)(3). *See, e.g., United States v. Chau,* 293 F.3d 96, 100 (3d Cir.2002) (holding that "$200,000 is a substantial expenditure" for purposes of sentencing enhancement); *United States v. Cunningham,* 194 F.3d 1186, 1202 (11th Cir.1999) (holding that cleanup expenditure of $147,716.66 was "substantial" for purposes of enhancement); *United States v. Bogas,* 920 F.2d 363, 369 (6th Cir.1990) (holding that where cleanup expenditure "came to a six-figure total," the district court's finding that "cleanup did not require a 'substantial' expenditure was clearly erroneous"). He nevertheless asserts that the district court failed to resolve a factual dispute as to whether this expenditure was caused by his unlawful activity, or whether it was caused by asbestos contamination that existed before the abatements occurred. We disagree.

Evidence at the hearing established that the cost of cleaning up the Broadalbin facility had been about $2.2 million and that the cost of cleaning the Gardner plant had been about $300,000. Russo attempted to show that these costs were not attributable to his unlawful abatements because the facilities already were contaminated when he arrived. The government offered evidence that the sites were clean until Russo's activities contaminated them.

The district judge sought to resolve this dispute as the hearing progressed. John Douglas testified about post-abatement cleanup procedures at the Broadalbin facility, and the district court attempted to clarify what Douglas meant by "cleanup"— that is, whether he meant cleanup associated with Russo's shoddy abatements, or

cleanup that would have had to be done regardless of Russo's unlawful activity. An extended colloquy ensued as the district judge struggled to convey to Douglas what he was asking. Douglas eventually understood and testified that if the unlawful abatements had not been performed, Rolla could have continued to use the plant, or simply sealed it up. Once the abatements occurred, however, the only option was to engage in an extensive decontamination effort. The district judge asked one more time whether Douglas, when he spoke of "cleanup," meant cleanup that had to be done in order to restore the habitability of the facility that existed before the unlawful abatements, and Douglas stated that this was his meaning.

The parties then were given the opportunity to propose findings of fact and conclusions of law. Russo argued in his post-hearing submission that an expenditure enhancement was not warranted because there was evidence that Rolla's facilities were contaminated before the unlawful abatements. The government suggested that the facilities were not contaminated before Russo conducted the abatements.

It was against this backdrop that the sentencing judge found that "the total cleanup for the two plants was over 2.5 million dollars." The record could not be clearer that the judge was aware of the causation dispute, and we therefore must infer that he considered the causation issue, as well as Russo's factual contentions about the prior state of the facilities, in making this determination. *See United States v. Fernandez,* 443 F.3d 19, 29 (2d Cir.) ("[W]e entertain a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise."), *cert. denied,* — U.S. ——, 127 S.Ct. 192, 166 L.Ed.2d 143 (2006); *see also Parker v. Dugger,* 498 U.S. 308, 314, 111

S.Ct. 731, 112 L.Ed.2d 812 (1991) ("We must assume that the trial judge considered [mitigating] evidence before passing sentence."); *United States v. Gale,* 468 F.3d 929, 941 (6th Cir.2006) ("There is a presumption in the law that a district court knows and applies the law correctly, and a similar presumption must extend to the court's factual review of the record. Thus, without some affirmative indication in the record to the contrary ... we presume that a district court has reviewed the evidence provided to it." (citation omitted)), *cert. denied,* —— U.S. ——, 127 S.Ct. 3065, 168 L.Ed.2d 758 (2007); *Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 906 (Fed.Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise"). Indeed, in the context it which it was made, the district court's finding that "the cleanup caused by the offense required a substantial expenditure [because] the total cleanup of the two plants was over 2.5 million dollars" has a robust meaning. It amounts to an adoption of the government's view of the facts—for which there was ample support in the record—and a rejection of Russo's. The colloquy with Douglas reveals that the judge's understanding of the word "cleanup" was "cleanup of the *contamination left by Russo.*" It therefore was no mistake that the judge referred not just to the "cleanup for the two plants" generally, but also to the "cleanup caused by the offense" in particular. We therefore conclude that the district court satisfactorily discharged its duty to resolve the factual dispute concerning the cause of the cleanup expenditure.

Russo next asserts that the district court erred in applying a four-level enhancement under Guidelines Section 3B1.1(a) for his leadership role in an offense involving at least five people. He does not dispute that the unlawful abatements were performed by at least five people, or that his role in the abatements, at the very least, was supervisory. Russo claims, however, that the district court made inadequate findings that he was more than a mere supervisor, and thus deserving of a four-level enhancement under Section 3B1.1(a), as opposed to a three-level enhancement under Section 3B1.1(b).

The district court adopted the findings in the pre-sentence investigation report ("PSR"), which indicated generally that Russo, Brewer, and Rolla conspired together to have a handful of laborers help them perform the unlawful abatements. More specifically, the PSR stated that Rolla contacted Brewer and Russo to perform the abatement jobs, that Brewer became unavailable to do the Gardner job and so left Russo to do it alone, that Russo hired laborers to help him, and that Russo met Rolla near a bank in Gardner and was given about $10,000 in cash as payment. The PSR further indicated that Rolla contacted Brewer and Russo about the Broadalbin job, that he agreed with both of them that he would pay $30,000, and that Brewer and Russo brought laborers with them to perform the unlawful abatement.

These findings, which the district court adopted, were sufficient to support a leadership enhancement under Section 3B1.1(a). The picture the PSR paints is of Brewer and Russo as equal partners, hiring laborers to perform unlawful abatements, and indeed, of Russo acting without Brewer to organize the offense in one instance. The PSR therefore indicated that Russo was involved extensively in the criminal activity, hired accomplices to help him, and exercised control over them. Each of these facts supported the conclusion that Russo was a leader, as opposed

to a mere supervisor. *See* U.S.S.G. Section 3B1.1, application note 4.

Russo nevertheless argues that he offered evidence at the sentencing hearing calling these findings into question, and that in simply adopting the findings in the PSR, the district court failed to resolve a factual dispute as to the extent of Russo's role in the offense. Russo points to evidence at the sentencing hearing showing that Rolla first contacted only Brewer, and that Brewer then recruited Russo to help him with the unlawful abatements, as well as Russo's own testimony that Brewer shared with him only a fraction of the money paid by Rolla. The government, on the other hand, presented evidence that Russo and Brewer played similar roles in the offense, and that they split the proceeds evenly. The parties highlighted their differing factual contentions in their posthearing submissions.

The district judge did not acknowledge Russo's factual contentions at sentencing, but in the context in which he made his ruling here, he was not required to do so. The record is clear that Russo presented his version of the facts to the sentencing judge, and so we reasonably may presume that the judge considered Russo's position, but ultimately rejected it. *Fernandez,* 443 F.3d at 29. That is, the record supports the conclusion that in adopting the findings in the PSR, the judge discredited Russo's evidence tending to show that the PSR misstated or otherwise failed to account for certain facts. Accordingly, the district judge did not err in imposing the four-level leadership enhancement.

■ Russo contends further that the district court erred in declining to grant a one-level reduction for acceptance of responsibility under Guidelines Section 3E1.1(b) in addition to the two-level reduction it granted under Section 3E1.1(a). The district court was not required to grant this additional reduction absent a motion from the government, however, and the government's decision not to file such a motion is reviewed only for unconstitutional motive or bad faith. *United States v. Sloley,* 464 F.3d 355, 358–61 (2d Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 1900, 167 L.Ed.2d 383 (2007). The government's position is that Russo did not accept full responsibility for his actions where he admitted the least serious charges at the plea colloquy but continued to deny the most serious accusations at sentencing and forced the government to prove them at an extensive hearing. We detect no bad faith or unconstitutional motive in the government's determination that Russo's guilty plea was not a full acceptance of responsibility, or that it did not "permit[ ] the government and the court to allocate their resources efficiently," U.S.S.G. § 3E1.1(b). Indeed, "[t]he record shows that the prosecutor was honestly dissatisfied with appellant's acceptance of responsibility." *Sloley,* 464 F.3d at 361 (citation omitted).

Finally, Russo contends that the district court failed adequately to consider the sentencing factors of 18 U.S.C. § 3553(a). "[W]e presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged [his] duty to consider the statutory factors." *Fernandez,* 443 F.3d at 30. While "a district court must 'consider' the factors listed in § 3553(a)," we nevertheless have "steadfastly refused to require judges to explain or enumerate how such consideration was conducted." *United States v. Pereira,* 465 F.3d 515, 523 (2d Cir.2006).

■ The district judge here stated that he had considered all of the Section 3553(a) factors and that he believed the eighteen-month sentence was sufficient, but not greater than necessary, to serve the statute's purpose. This is sufficient to

satisfy us that the district court adequately considered the sentencing factors. *See United States v. Williams*, 475 F.3d 468, 477 (2d Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 881, 169 L.Ed.2d 739 (2008).

■ We reject Russo's claim that there was unwarranted disparate treatment of the three defendants in this case. As noted, the evidence supported the conclusion that Russo and Brewer were equally culpable. Although Brewer may have known of the abatement jobs first and recruited Russo to help him, the record does not indicate that Brewer exerted more control over the laborers than Russo, had any authority over Russo, or participated in the criminal activity to any greater degree. Moreover, although Brewer had a more substantial criminal history than Russo but received the same sentence, and although Rolla received no prison time, these two defendants accepted responsibility for their actions at early stages of the proceedings and the government therefore urged the district court to be lenient at sentencing. Russo, by contrast, although he pleaded guilty, continued to deny many of the most serious charges against him and forced the government to prove much of its case during the sentencing hearing. The government reasonably concluded that Russo had not accepted full responsibility for his actions and it therefore did not urge clemency. Accordingly, Russo was not on equal footing with his codefendants, and his claim of unwarranted disparate treatment is not an appropriate basis for upsetting the district court's judgment as to the appropriate sentence in this case.

We have considered Russo's remaining arguments and conclude that they are without merit.

The judgment of the district court is hereby **AFFIRMED**.