NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 08-4347
_____

UNITED STATES OF AMERICA

v.

IZEM COLEMAN,
            Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-06-cr-00449-007)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2010

Before: SLOVITER, GREENAWAY, JR., and STAPLETON, Circuit Judges.

(Filed    December 15, 2010 )
_____

OPINION
_____

SLOVITER, *Circuit Judge*.

Izem Coleman pled guilty to conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, that is, crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a); 846. The District Court imposed a sentence of 200 months, substantially below that recommended by the Federal Sentencing Guidelines ("Guidelines"), with seven years supervised release.[1] We will affirm.[2]

Coleman argues that the Court improperly calculated his Guideline range by applying a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for his managerial and supervisory role in the drug organization.[3] He contends that he was not a manager or supervisor of the organization because: (1) his duties and responsibilities were merely "privileges" he enjoyed from his friendship with the organization's leader; (2) his activities were "consistent with common drug dealing;" and (3) his co-defendants "enjoyed greater responsibility and privileges." Appellant's Br. at 13-14. A defendant acts as a manager or supervisor of criminal activity where he "exercises some degree of

---

[1] Under the Guidelines in effect on May 1, 2008, Coleman's Guidelines range was 262-327 months.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. §§ 1291 and 3742(a). The District Court properly construed Coleman's pro se Motion for Extension of Time as his timely notice of appeal. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (rules of procedure must be construed liberally).

[3] We review the determination of Coleman's aggravating role for clear error. *See United States v. Hunter*, 52 F.3d 489, 492 (3d Cir. 1995).

control over others involved in the offense." *United States v. Chau*, 293 F.3d 96, 103 (3d Cir. 2002) (quotation marks and brackets omitted).

Coleman conceded all the facts regarding his role in the organization. These facts established that Coleman handed out packs of crack to other workers for sale, collected money from those workers' sales, delivered bulk quantities of drugs to customers, was responsible to see that operations ran smoothly, and was a trusted organization member who was privy to sensitive information. These facts demonstrate that Coleman exercised "some degree of control" over others in the organization and that he acted in a managerial or supervisory role. *See id.*

Coleman's characterization of his duties and responsibilities as mere "privileges" or "activities consistent with common drug dealing" is unavailing. Even if true, they were nonetheless managerial or supervisory privileges or activities. Moreover, the fact that Coleman's co-defendants "enjoyed greater responsibility and privileges" does not diminish his own managerial and supervisory role. Multiple individuals in the same conspiracy can be managers or supervisors. U.S.S.G. § 3B1.1 cmt 4. The District Court did not clearly err in concluding that Coleman had "management responsibility" and in applying the two level adjustment under § 3B1.1(c). App. at 156.

Coleman similarly argues that the District Court improperly calculated his Guideline range by finding him responsible for 4.5 kilograms of crack pursuant to U.S.S.G. § 2D1.1(c).[4] He asserts that the distribution of only 4.45 kilograms of crack

---

[4] We review a finding concerning drug quantity for clear error. *United States v. Paulino*, 996 F.2d 1542, 1545 (3d Cir. 1993).

was attributable to him, and that the Court was "unduly influenced by the words of others who were involved in the conspiracy" in finding him responsible for a greater quantity. Appellant's Br. at 17. In determining the quantity of drugs for which a defendant should be held accountable, the sentencing court may consider "relevant conduct," including "the conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant." *United States v. Gibbs*, 190 F.3d 188, 214 (3d Cir. 1999) (quotation marks omitted); *see* U.S.S.G. § 1B1.3(a)(1)(B) (relevant conduct); *see also United States v. Collado*, 975 F.2d 985, 990-91 (3d Cir. 1992). The calculation of the amount of drugs involved in a particular operation oftentimes involves "a degree of estimation . . . ." *Paulino*, 996 F.2d at 1545; *see* U.S.S.G. § 2D1.1 cmt 12.

Coleman stipulated that he personally "bagged or packaged crack cocaine for three to four months during [the] time period [he was involved in the conspiracy] . . . , packaging approximately 9 ounces every four to five days." Supp. App. at 6. The Presentence Report ("PSR") states that the "most conservative calculation, that is, 9 ounces (approx. 250 grams) packaged every 5 days for three months (90 days), results in 4.5 kilograms of crack cocaine" whereas the least conservative calculation results in 7.5 kilograms of crack cocaine. PSR ¶ 149 n.10. The calculation Coleman proposes, which results in 4.45 kilograms, is based on 9 ounces, packaged every five days for three months, with one of those months being a February and having only 28 days.

Coleman's ultra conservative reading ignores the fact that he stipulated to a range, with the least conservative calculation resulting in 7.5 kilograms of crack cocaine that

Coleman personally packaged. His calculation also fails to account for the amount of crack distributed by others during the time in which Coleman participated in a managerial or supervisory role, and for which he is responsible. *See Gibbs*, 190 F.3d at 214; U.S.S.G. § 1B1.3(a)(1)(B). Rather than being "unduly influenced by the words of others who were involved in the conspiracy," Appellant's Br. at 17, the Court properly considered Coleman's own stipulation and the "proffers" and "allocutions of others," which were also relevant. App. at 160. The Court did not clearly err in finding Coleman responsible for at least 4.5 kilograms of crack pursuant to U.S.S.G. § 2D1.1(c).

Coleman also argues that his sentence was unreasonable in that it "incorporated" and considered evidence of a prior arrest "that was not supported by any evidence."[5] Appellant's Br. at 16. He refers to the Government's assertion at sentencing that Coleman was arrested on a gun charge that was ultimately dismissed and that "[t]here is information the United States has that Mr. Coleman brought the guns to that occasion just prior to the four individuals being arrested." App. at 148. The PSR, however, listed Coleman's arrest for, inter alia, "possession of a defaced weapon." PSR ¶ 208. The Government's sentencing memorandum reports that a co-defendant stated that Coleman admitted to him that he (Coleman) "brought the guns." App. at 114 n.6. The arrest and attendant circumstances, therefore, was supported by evidence. Moreover, there is no indication that the Court considered the prior arrest or its surrounding circumstances

---

[5] Because Coleman did not raise this argument below, we review for plain error. *United States v. Vasquez-Lebron*, 582 F.3d 443, 445 (3d Cir. 2009). We will not reverse a defendant's reasonable sentence absent an abuse of discretion. *Rita v. United States*, 551 U.S. 338, 351 (2007).

when it deliberated Coleman's sentence.  Coleman fails to demonstrate that the Court plainly erred.

The Court reached its substantially below-Guidelines sentence after meaningfully considering the factors enumerated in 18 U.S.C. § 3553(a).  That sentence was substantively and procedurally reasonable.  Accordingly, we will affirm.