**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4703
_____

UNITED STATES OF AMERICA


v.

GENE CORNELL SMITH, a/k/a CORNELL SMITH,

Gene Cornell Smith,
                    Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cr-00132-001)
District Judge: Honorable Cynthia M. Rufe

_____


Submitted under Third Circuit LAR 34.1(a)
October 6, 2015

Before:  SHWARTZ, KRAUSE, and GREENBERG, *Circuit Judges*

(Filed: October 7, 2015)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Upon purchasing an old Philadelphia warehouse for the storage of cars as part of a vehicle wholesale business, Gene Cornell Smith authorized an amateur asbestos removal project on the property and repeatedly failed to bring the renovation up to federal standards. As a result, he was convicted of five counts of illegal removal of asbestos, in violation of 42 U.S.C. § 7413(c)(1), and one count of conspiracy to illegally remove asbestos, in violation of 18 U.S.C. § 371. Smith challenges his conviction, arguing that there was insufficient evidence to support these counts and that the District Court gave improper jury instructions, and he challenges his sentence on the basis of the enhancements imposed by the District Court. For the reasons set forth below, we will affirm.

## I.    Background

In September 2007, Smith purchased a warehouse property located in a residential community in northern Philadelphia. Smith hired his co-defendant, Clarence Cole, to renovate the property in preparation for storing cars and creating office space for a vehicle wholesale business. In October 2007, Cole contacted a trained asbestos removal professional to inquire about contracting his services to remove asbestos on the property. After receiving a quote from the contractor, Smith opted not to hire him but instead to leave it to Cole to oversee all renovations of the property. Cole in turn hired a crew of laborers who, unaware of the presence of asbestos, used sledgehammers to break apart asbestos-coated pipes, piled contaminated materials in an outdoor dumpster, and threw

the dismembered pipes from a hole in the wall on the second floor onto a driveway shared between the warehouse and a neighboring church—all without proper safety equipment. As the renovation project progressed, bags of friable asbestos material[1] were strewn about the yard; debris blanketed the property; and loose asbestos and contaminated pieces of metal were swept against the side of the building and left exposed to the elements.

Acting on a tip, the Philadelphia Health Department investigated and informed Smith that his property was out of compliance with federal work practice standards and that he would have to hire a trained professional to remove or contain the asbestos. Work practice standards are procedures published by the Environmental Protection Agency ("EPA") that dictate the steps one must follow to comply with the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, when dealing with certain hazardous substances, such as asbestos. 42 U.S.C. § 7412(h). Under the CAA, it is a criminal offense for an "owner or operator of a demolition or renovation activity" in a facility like Smith's warehouse to commit a knowing violation of asbestos work practice standards. 42 U.S.C. § 7413(c)(1); 40 C.F.R. § 61.145. Despite multiple warnings from city officials, however, Smith failed to hire a trained professional to remove the asbestos material and failed to follow other asbestos-related work practice standards. *See* 40 C.F.R. §§ 61.145, 61.150. Instead, the renovation continued in a haphazard and dangerous manner under Cole's direction. After

---

[1] Asbestos material is friable if, "when dry, [it] can be crumbled, pulverized, or reduced to powder by hand pressure." 40 C.F.R. § 61.141. Friable asbestos is considered especially hazardous because it is more readily airborne.

3

months of hazardous conditions and unfulfilled promises by Smith to hire a qualified contractor to bring the property up to standards, the federal government intervened by cleaning up the site using Superfund money.

Smith was indicted and convicted by a jury of his peers of five counts of violating the CAA by illegally removing asbestos, in violation of 42 U.S.C. § 7413(c)(1), and, along with Cole, one count of conspiracy to illegally remove asbestos materials, in violation of 18 U.S.C. § 371. In addition to ordering Smith to pay $451,936.80 in restitution and $600.00 in a special assessment, the District Court imposed a six-level sentencing enhancement for the "ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment," U.S.S.G. § 2Q1.2(b)(1)(A), and a two-level enhancement for Smith's role as the "organizer, leader, manager, or supervisor in any criminal activity" involving fewer than five participants, *id.* § 3B1.1(c), for a sentence totaling forty-two months' imprisonment. Smith filed this timely appeal.

## II. Jurisdiction

The District Court had jurisdiction to hear this case under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III. Discussion

On appeal, Smith advances three arguments. First, he seeks to overturn his convictions, arguing that the Government adduced insufficient evidence that he knowingly violated or conspired to violate 42 U.S.C. § 7413(c)(1) or that he was the

4

"owner or operator" of the renovation project under 40 C.F.R. § 61.145.  Second, he requests a new trial on the basis of jury instructions he believes were misleading and legally incorrect.  Third, Smith argues that, if his convictions stand, he should be resentenced because the District Court improperly applied the sentence enhancements under U.S.S.G. §§ 2Q1.2(b)(1)(A) and 3B1.1(c).  We discuss these issues in turn.

## A. Sufficiency of the Evidence

Smith contends that there was insufficient evidence to prove (1) that he knowingly violated the mandatory EPA work practice standards that govern asbestos removal, (2) that he engaged in a conspiracy with Cole, or (3) that he was an "owner or operator" of the worksite.  Because Smith did not move for a judgment of acquittal based on the sufficiency of the evidence in the District Court, we review for plain error.  *United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002).  As such, we may overturn the verdict only if it amounts to a "fundamental miscarriage of justice."  *Id.* (quoting *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir.1999)) (internal quotation marks omitted).  That high threshold is not crossed here.[2]

First, there was extensive evidence from which a reasonable juror could have concluded that Smith knew the property contained asbestos and knew and approved of Cole's illegal abatement work.  That evidence included testimony by a contractor

[2] On this record, we would find no error even under the less stringent standard of review applicable if Smith had moved in the District Court for acquittal based on sufficiency of the evidence.  That is because, in viewing the evidence in the light most favorable to the prosecution, we sustain the verdict where, as here, any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citation omitted).

5

indicating that Smith knew about the asbestos before allowing Cole to hire workers and to oversee the illegal removal himself, and testimony from other witnesses that Smith was on the worksite at various points over the course of the renovation project, including for the purposes of paying the workers for their efforts. While Smith disputes this evidence, his disagreement with testimony proffered at trial is not a basis for overturning his conviction, as it is not our role to reweigh the evidence in the jury's stead. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998).

Second, the ample evidence of Smith's informal agreement with Cole to remove the contaminated materials *after* they were both made aware of the asbestos from the contractor's quote is sufficient to support the conspiracy conviction. To prove conspiracy under 18 U.S.C. § 371, the Government must show: "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010) (citation and internal quotation marks omitted). Testimony regarding Smith's choice to disregard the abatement contract proposal submitted by the qualified contractor, his agreement with Cole, and his periodic presence at the worksite was sufficient for a reasonable jury to find the elements of conspiracy satisfied.

Third, in stipulating to the fact that Smith was the owner of the property at issue, the Government *and* Smith provided sufficient evidence at trial from which a reasonable juror could conclude that Smith was the "owner or operator of a demolition or renovation

6

activity" within the meaning of the CAA. 40 C.F.R. § 61.145. Smith nonetheless contends the evidence showed that he was merely a "passive owner" who did not exercise "substantial control" over the worksite. Appellant's Br. 16-17. That, however, would not render the evidence of Smith's ownership insufficient. While it is true that we have held that a *non-owner's* "significant or substantial or real control and supervision of a project" may tip the scales in favor of finding criminal liability under the CAA, *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (quoting *United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 333 (3d Cir. 1998) (internal quotation marks omitted), Smith can point to no authority that requires such a control element for an actual owner. Rather, an "owner or operator" is defined in the pertinent regulations as "any person who owns, leases, operates, controls, or supervises the facility being demolished or renovated or . . . the demolition or renovation operation, or both," 40 C.F.R. § 61.141, and it is undisputed that Smith owned the property being renovated in this case. Even if the Government had been required to prove "substantial control," Smith can hardly be said to have been a "passive owner" given that he knew about the asbestos problem, declined to hire a qualified removal expert, made the decision to leave removal to Cole, provided money for Cole's workers, and, despite repeated warnings from city officials, refused to ameliorate the situation. Thus, there was more than enough evidence to deem Smith the "owner or operator" of the warehouse within the meaning of 40 C.F.R. § 61.145.

In sum, on this record, there was ample evidence from which a reasonable jury could convict Smith on all charges, and it cannot be said that the conviction amounts to a "fundamental miscarriage of justice." *Gordon*, 290 F.3d at 547 (internal quotation marks and citation omitted).

## B. Jury Instructions

Smith fares no better with his argument that the jury instructions given by the District Court were misleading, confusing, and misstated the law. In outlining a required element of the CAA offense, the District Court tasked the jury with determining if "Mr. Smith was the owner of a renovation activity." App. 973. Smith contends that this instruction was ambiguous and that the jury could have interpreted it to mean that Smith owned an asbestos renovation business rather than to require the jury to find that he owned the underlying property. Again, because Smith failed to object to the jury instructions below, we review the District Court's instructions for plain error. *United States v. Salahuddin*, 765 F.3d 329, 337 (3d Cir. 2014).

We conclude there was no error, much less plain error, because the District Court's instructions accurately informed the jury of the meaning of the relevant terms, quoting language directly from the relevant regulation. That is, as previously noted, the EPA regulations ascribe criminal liability to an "owner or operator of a demolition or renovation activity," and the District Court accurately instructed the jurors, drawing upon these regulations, that "owner of a renovation activity" means "any person who owns, leases, operates, controls or supervises the facility being renovated." App. 976. We

8

perceive no error in these accurate jury instructions and no basis for concluding they were misleading, confusing, or misstated the law. *See United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010).

## C. Sentence Enhancements

Finally, reviewing the District Court's sentencing enhancements de novo and the underlying factual findings for clear error, *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc), we conclude that Smith's challenge to his sentence also lacks merit.

The Sentencing Guidelines provide for a six-level enhancement for environmental offenses that result in "an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment." U.S.S.G. § 2Q1.2(b)(1)(A). That standard was easily met on this record. The evidence from Smith's trial paints a picture of months of substandard asbestos removal resulting in friable asbestos material in the air, bags of asbestos littered about the property, a dumpster full of asbestos exposed to the elements, and a neighborhood subjected over those months to a serious health hazard. Indeed, one witness who had worked in the asbestos field as an environmental consultant for more than twenty years testified that he had "never been on any site where [he had seen] that much contamination just out in an open space." App. 366. The District Court's application of § 2Q1.2(b)(1)(A) on these facts was thus entirely appropriate. *See United States v. Chau*, 293 F.3d 96, 98-100 (3d Cir. 2002) (applying § 2Q1.2(b)(1)(A) to a defendant who deposited trash bags full of asbestos into a vacant lot).

9

The District Court also committed no error in applying a two-level enhancement for Smith's status as an "organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). The commentary accompanying this guideline indicates that this enhancement applies to one who "supervis[es] . . . one or more other participants" in the criminal activities. U.S.S.G. § 3B1.1(c) cmt. n.2. While merely managing a building, but not the people engaged in criminal behavior within, does not render one a supervisor for purposes of § 3B1.1(c), *United States v. Fuentes*, 954 F.2d 151, 153-54 (3d Cir. 1992), this enhancement is proper when an individual "exercise[s] some degree of control over others involved in the offense," *Chau*, 293 F.3d at 103 (alteration in original) (internal quotation marks and citation omitted). Smith hired Cole initially, tasked him with overseeing the day-to-day removal activities on Smith's property, and provided the funds to pay Cole's workers. Smith thus directed Cole to engage in illegal asbestos removal and exercised sufficient control over him to be considered Cole's supervisor for purposes of this enhancement.

* * *

For the above-stated reasons, we will affirm Smith's conviction and the sentence imposed by the District Court.